THE EASTERN ILLINOIS STATE NORMAL SCHOOL, Plaintiff in Error, *vs.* THE CITY OF CHARLESTON, Defendant in Error.

*Opinion filed February 16, 1916.*

1. MUNICIPAL CORPORATIONS—*when city is exercising governmental function.* In the creation of a system of water-works and the operation of the same for the purpose of protection against fire, flushing sewers or other uses pertaining to the public health and safety, the city is in the exercise of police power and is therefore exercising a governmental function.

2. SAME—*when a city acts in same capacity as a private corporation.* In supplying water for the use of the inhabitants for domestic and commercial purposes a city is not exercising a governmental power but acts in the same capacity as a private corporation, although the business is carried on for the public advantage and is impressed with a public use.

3. SAME—*material distinction between governmental and private powers.* There is a material distinction between powers which are governmental and those which are in their nature private, in the fact that a municipal corporation is not liable in a private action for injuries resulting from the exercise of governmental powers while it is liable in case of its improper exercise of a power in its private capacity.

4. SAME—*when distinction between governmental and private powers is of little importance.* The distinction between the governmental and private powers of a municipal corporation is of little importance, where the question involved is whether a city had power, in any capacity, to enter into a contract.

5. SAME—*powers of municipal corporation.* The powers of a municipal corporation are only those which are expressly granted or necessarily implied to make the grant of specific powers effective, and if there is no express authority for a contract or any legitimate corporate purpose from which the power to enter into the contract may be implied, the contract is void and cannot be enforced.

6. SAME—*a donation to secure location of State institution is not a proper corporate purpose.* A donation by a city to secure the location of a State institution is not a proper corporate purpose in the absence of express statutory authority.

7. SAME—*city has no power to agree to furnish water to State institution for fifty years for five dollars.* A city has no power to bind itself, in consideration of the location of a State institution

in or near the city, to furnish for five dollars all the water the institution may use for fifty years. (*Richelieu Hotel Co.* v. *Encampment Co.* 140 Ill. 248, *Green Co.* v. *Blodgett,* 159 id. 169, and *Chicago* v. *University of Chicago,* 228 id. 605, distinguished.)

8. SAME—*a city cannot be estopped to repudiate a contract beyond its power.* A city cannot be estopped to repudiate a contract which it had no express or implied power to make, as everyone is presumed to know the extent of the powers of a municipal corporation, and the sustaining of a claim of estoppel would be conferring power upon the city to do unauthorized acts simply because it has done them and received the benefit.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

P. J. LUCEY, Attorney General, and T. N. COFER, for plaintiff in error.

JOHN T. KINCAID, City. Attorney, ALBERT C. ANDERSON, and BEN F. ANDERSON, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The General Assembly passed an act, in force July 1, 1895, entitled "An act to establish and maintain the Eastern Illinois State Normal School," which was created a corporation to be governed by a board of trustees appointed by the Governor with the advice and consent of the senate. The trustees were appointed and planned to receive donations from different localities in consideration of the location of the school. The city of Charleston owned and operated a water-works plant and system, and as an inducement to procure the location of the school at said city the city council adopted a resolution on July 5, 1895, as follows: "A resolution offering the trustees of the Eastern Illinois State Normal School, providing it be located in this

city, all the water it may require for use in its buildings
and on its grounds, also for fire protection, for the consid-
eration of five dollars for the period of fifty years; which
was read and on motion adopted by all voting aye." As a
result of the inducement offered by the resolution the trus-
tees located the school at the city of Charleston and tapped
the water main and connected its water pipes therewith,
extending to the building and grounds, at its own expense
and has since kept and maintained the same. The trustees
located buildings on the ground where the school was lo-
cated, adjoining the south corporate line of the city, and
the ground was afterward brought within the corporate lim-
its and is now within the city. The buildings were com-
pleted and the school conducted, and it now has an attend-
ance of five hundred scholars, with thirty-three teachers.
It has a dormitory furnishing board and rooms to a large
number of students, and requires a large amount of water
to generate steam for heating and for the other uses of the
school. The city complied with its agreement until May
15, 1913, when the city council repudiated it and refused
to continue furnishing water as agreed. On July 17, 1913,
an ordinance was passed for the installation of water met-
ers, and in compliance with that ordinance meters were in-
stalled to measure the water consumed by the school. The
cost of meters and installation and a regular rate for water
was charged to the school, amounting to $309.30 up to Oc-
tober 1, 1913, and the city threatened to cut off the water
and disconnect the water pipes unless the bill were paid.
On November 25, 1913, the Eastern Illinois State Nor-
mal School filed its bill of complaint in the circuit court of
Coles county, alleging in its amended bill the foregoing
facts and asking the court to compel the city to specifically
perform its agreement and to enjoin it from shutting off
the water supply. A temporary injunction was ordered and
issued and the defendant appeared and demurred to the
amended bill, admitting the facts but alleging that it had

no legal right to make the contract. The demurrer was sustained, and the complainant elected to stand by its bill and the bill was dismissed. An appeal was prosecuted to the Appellate Court for the Third District, where the decree was affirmed, and a writ of *certiorari* was granted by this court to review the judgment of the Appellate Court.

Section 1 of the act authorizing cities, incorporated towns and villages to construct and maintain water-works, in force April 15, 1873, as amended in 1879, (Laws of 1879, p. 64,) authorizes all cities, incorporated towns and villages to provide for a supply of water for the purpose of fire protection and for the use of the inhabitants of such cities, incorporated towns and villages, by erecting, constructing and maintaining a system of water-works for fire protection and the use of the inhabitants for domestic and commercial purposes. Section 4 of the act provides that the common council of cities or trustees of towns or villages having a water-works system shall have power to tax, assess and collect such tax, rent or rates for the use and benefit of water used or supplied by such water-works as the common council or board of trustees, as the case may be, shall deem just and expedient.

Municipalities are created primarily for the exercise of such portion of the powers of sovereignty within the corporate limits as the General Assembly may see fit to bestow upon them, and they may also be authorized to supply conveniences to the inhabitants, such as bringing water from some source of supply and distributing it to those desiring it. In the creation of a system of water-works and the operation of the same for the purpose of protection against fire, flushing sewers or other uses pertaining to the public health and safety the city is in the exercise of the police power and is therefore exercising a governmental function. (*Wilcox* v. *City of Chicago,* 107 Ill. 334; *City of Chicago* v. *Selz, Schwab & Co.* 202 id. 545.) In supplying water for the use of the inhabitants for domestic and commer-

cial purposes a municipality is not in the exercise of a governmental power but acts in the same capacity as a private corporation although the business is carried on for the public advantage, and being public in its nature is impressed with a public use. (*Wagner* v. *City of Rock Island,* 146 Ill. 139; *City of Chicago* v. *Town of Cicero,* 210 id. 290; *People* v. *Schlitz Brewing Co.* 261 id. 22.) There are material distinctions between the exercise of governmental powers and those which are in their nature private, in the fact that in the exercise of governmental powers a municipality is not liable to a private action, while it is liable for injuries resulting from improper exercise of a power in its private capacity. Any distinction, however, based on the nature of the power exercised is of very little importance in determining whether the city of Charleston is bound by its contract, which rests on the question whether the city had power to enter into it in any capacity. The argument for the sufficiency of the bill is, that because the city was authorized to construct and maintain water-works and supply water to the inhabitants of the city and the exercise of that power was in its private capacity, therefore the city could enter into any contract it saw fit for a term of fifty years and would be bound by it. The conclusion does not follow either from the fact that the city had authority to supply water nor that the exercise of the power was in a private capacity, but the question is whether the city had power to make the contract it did make to furnish water to the complainant or to any person or corporation for fifty years for five dollars. The rule is that the powers of municipalities are only those expressly granted or necessarily implied to make the grant of specific powers effective. (*Seeger* v. *Mueller,* 133 Ill. 86; *City of Chicago* v. *M. & M. Hotel Co.* 248 id. 264.) The only statutory powers conferred by law upon cities in respect to water-works and water supply are those which have been stated above. If there is no legitimate corporate purpose from which the

power to enter into the contract may be implied the contract was void and cannot be enforced.

The question whether a donation to secure the location of a State institution was a corporate purpose of a county came before this court in *Livingston County* v. *Weider*, 64 Ill. 427. In that case the board of supervisors of Livingston county authorized an issue of bonds for the purpose of securing the location of the State Reform School at Pontiac, and afterward filed a bill to enjoin the county treasurer from paying interest on the bonds. Mr. Justice Breese, in delivering the opinion of the court, declared that setting up the location of State institutions to the highest bidder was contrary to public policy and the interests of the people of the State, but the bonds were declared void because of a want of power to issue them although the county had secured the location of the reform school. The term "corporate purposes" was there defined to be such purposes, and such only, as are germane to the objects of the incorporation of the municipality,—at least such as have a legitimate connection with those objects and a manifest relation thereto,—and it was held that providing a location for a State institution was not a corporate purpose.

Afterward the case of *Burr* v. *City of Carbondale*, 76 Ill. 455, was considered by the court. In that case the General Assembly provided for the location of the Southern Illinois Normal University and required the trustees to advertise for proposals from localities desiring to secure the location of the institution and to open and examine the proposals and locate the institution at such point as should, all things considered, offer the most advantageous terms. The General Assembly passed, also, an act to authorize cities and towns in southern Illinois to issue bonds to be used by municipal authorities in aid of the institution if the same should be located in the municipality issuing the bonds. The act provided for an election, and an election was held and bonds issued in pursuance thereof and were in the

hands of innocent holders. The institution was located at Carbondale and the city afterward filed its bill to declare its action void. Mr. Justice Breese, speaking for the majority, again expressed the view that setting up the location of the institutions of the State to the highest bidder was impolitic and unwise but found sufficient distinction between the *Livingston case* and that one to sustain the validity of the bonds. The reasons given were that the bonds were issued under an act of the General Assembly by a vote of the majority of the legal voters and the bonds were in the hands of innocent holders. The court said: "The disreputable feature of the case is, that the same authority doing all these acts and whose city has received the benefit of them now seeks to repudiate them. There is no rule of law, equity, justice or morals compelling this and we cannot sanction it." The substantial reason for the decision, however, was that the General Assembly had authorized the transaction and was acting within its powers in doing so.

In the case of *City of Danville* v. *Danville Water Co.* 178 Ill. 299, the city council of Danville passed an ordinance granting to the water company the right to construct and maintain water-works for a term of thirty years and by the same ordinance rented fire hydrants for specific sums for that period, with provisions for the rates to be paid for hydrants installed in the future. The city, after obtaining the water-works and complying with its contract for a time, denied its liability and passed an ordinance reducing the rates fixed by the contract. It was held that the ordinance reducing the rates was valid, and that the city had a right, under the law authorizing it to fix rates, to reduce the rates agreed upon by the contract notwithstanding its agreement and had no power to bind itself by fixing a rate for its water supply for thirty years.

In the case of *Freeport Water Co.* v. *City of Freeport,* 186 Ill. 179, the city of Freeport granted to the water company the right to supply the city, by a system of water-

works, with water for a term of thirty years, and the city agreed to pay certain rates for hydrants and was to be given the free use of water for flushing sewers and various other public purposes. The city council afterward passed an ordinance changing and reducing the price to be paid for each hydrant, and it was held that the city had no power to bind itself to the payment of the fixed sums for the entire period but might make reasonable reductions in the rates to be paid, notwithstanding its contract and the fact that it had obtained the consideration.

In the *Danville* and *Freeport cases* the consideration was the construction of water-works and a supply of water and upon the faith of the contract water-works were built in both cities, while in this case the supposed consideration for the agreement was the location of the State institution. If neither the city of Danville nor the city of Freeport could make a binding agreement how much the city would pay for water for a term of years, it cannot be said that the city of Charleston, without legislative authority, could agree to furnish water to the complainant or anybody else for fifty years for five dollars, whether the exercise of the power was in its nature private or governmental.

It is contended that because it has been held that a private corporation may enter into a contract to secure the location of a post-office site or a military encampment a city must have the same right to secure the location of a State institution that will benefit its inhabitants. The question whether a private corporation can make such a contract depends upon the nature of the corporation and whether the contract is connected with the legitimate exercise of its corporate powers. It has been held that a corporation engaged in business may make a contract to secure the location of a post-office site at a place that will tend to increase its business and that a hotel company may contract for the location of a military encampment, (*Richelieu Hotel Co.* v. *Military Encampment Co.* 140 Ill. 248; *Green Co.* v. *Blod-*

271 — 39

*gett,* 159 id. 169;) but that was because the contract was not foreign to the business of the corporation. If a contract is *ultra vires* in the proper sense it is void. (*National Home Building Ass'n* v. *Home Savings Bank,* 181 Ill. 35.) In the case of *City of Chicago* v. *University of Chicago,* 228 Ill. 605, the university filed its bill to enjoin the city from shutting off the water supply of the complainant, which had been remitted by ordinance. The city by its answer alleged that the city water-works system was private property of the city, conducted as a private enterprise and not as a governmental function, and that it had a right to charge whatever reasonable rates it saw fit. This court held that the question whether the ordinances were void because the city could not give away public property did not arise on the record, for the reason that the city having alleged the validity of the ordinances in its answer could not be heard to say that the circuit court erred in adopting its view. There was therefore no question concerning the want of power of the city to pass the ordinances or its right to assert their invalidity.

The final argument in support of the bill is that the city is estopped to dispute the validity of the contract although it had no power to enter into it, for the reason that it has received the consideration. That reason did not prevail in any of the cases heretofore considered. Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for. *Stevens* v. *St. Mary's Training School,* 144 Ill. 336; *Hope* v. *City of Alton,* 214 id. 102; *May* v. *City of Chicago,* 222 id. 595; *People* v. *Parker,* 231 id. 478.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*