**LLOYD E. CLARKE, INC., et al., Appellees,**

v.

**CITY OF BETTENDORF, Iowa, a municipal corporation, et al., Appellants.**

**No. 52848.**

Supreme Court of Iowa.

April 9, 1968.

Albert J. Stafne, Jr., Bettendorf, for appellants.

Herrick, Langdon, Sandblom & Belin, Des Moines, Hoersch & Werner, Davenport, and Peart, Lincoln & Wells, Davenport, all for appellees.

BECKER, Justice.

This case comes to us after ruling on motion for judgment on the pleadings. Plaintiffs seek declaratory judgment decreeing invalid and void an ordinance of the City of Bettendorf providing charges for connection to the city sanitary sewer system. The trial court held the ordinance illegal and void but granted defendants time to amend their answer. Defendants by amendment alleged plaintiffs were estopped from challenging the validity of the ordinance. Thereupon defendants amended and renewed their motion for judgment on the pleadings. Again, the trial court ruled in favor of plaintiffs. As to the plea of estoppel the court held a power which a city does not have by statute cannot be created by estoppel. Plaintiffs also moved to strike portions of defendants' amended answer but the court found no need to rule on that motion.

■ The factual background comes from the pleadings. Defendants admit in their answer all the factual allegations of plaintiffs' petition. They deny only two paragraphs containing plaintiffs' conclusions. Since plaintiffs filed the motion for judg-

ment on the pleadings and no reply has been filed to any of the facts pleaded as an affirmative defense, the well pleaded factual allegations in defendants' answer are taken as true. Nall v. Iowa Electric Company, 246 Iowa 832, 835, 69 N.W.2d 529.

We therefore recite the facts chronologically for easier understanding and without regard to the source of the allegations.

Plaintiffs are corporate real estate subdividers and developers. Prior to April 12, 1966, the date the ordinance in question was adopted, plaintiffs requested the city extend sanitary trunk sewers to their respective subdivisions. The developers and the city held meetings to discuss financing new sewer extensions through large underdeveloped areas to reach plaintiffs' land and the necessary enlargement of present equipment occasioned by such developments.

On February 9, the parties orally agreed the city at its initial expense would extend the sewers as requested to serve plaintiffs' properties. This would include necessary additions to the existing system. The improvements were to be financed by the city's issuing general obligation bonds to be retired partially by a connection charge of $125 for each house connection in the subdivision. An ordinance to that effect was contemplated. Without such an agreement the city would not construct the sewer.

The city went ahead with the planned extensions and concurrently passed the ordinance in question regulating connection methods and providing in pertinent part as follows:

"(1) The basic connection fee for each connection made to the sanitary sewer system of the City of Bettendorf, Iowa, shall be as hereinafter stated and shall be based upon the following three classes of building sewer permits:

"(I) Residential properties-connection fee shall be One Hundred Twenty-five Dollars ($125.00).

"(II) Commercial or business properties-connection fee shall be Two Hundred Dollars ($200.00).

"(III) Establishments producing industrial wastes-connection fee shall be Three Hundred Dollars ($300.00)."

Plaintiffs made application to connect their various new houses to the sewer. They tendered a $5 inspection fee and $1 digging fee but refused to pay the $125 connection fee. The city denied the application for failure to pay the latter sum. Plaintiffs paid the full fee under protest and started this action seeking to have the pertinent parts of the ordinance declared illegal and void. They allege the city intends to continue to collect the fees in question under what they contend is an illegal ordinance.

The trial court held the city had no statutory or other authority to levy the connection fees provided in the new ordinance and could not gain that authority by estoppel. We agree.

I. Code of Iowa, 1966, sections 368.26 and 391.11 authorize a city to construct, repair and regulate connections. The first issue here is whether the city can finance such construction in whole or in part by charging connection charges in excess of the normal and nominal inspection fee; the excess to be used to finance initial construction.

Section 391.13 empowers the city to finance the construction of any main sewer or system of main sewers by assessing the cost to the respective lots as adjacent property. Section 391.18 to 391.91 regulates the powers and procedures of the city in levying such assessments. These regulations are specific and detailed. This assessment power is one method of financing sewer construction.

A second method of financing construction, reconstruction or repair of main sewers and sewage purifying plants is by issuance of general obligation bonds as

provided in section 396.2 and section 404.9. The latter section also allows for use of a combination of the first and second methods.

II. No other provision is provided for payment for sewer construction unless section 391.8 is broad enough to allow for connection fees or hook-on charges to be used as a method of financing. Section 391.8 provides: "Gas, water, and other connections. They shall have power to require the connections from gas, water, and steam-heating pipes, sewers, and underground electric construction, to the curb line of adjacent property, to be made before the permanent improvement of the street and, if such improvements have already been made, to regulate the making of such connections, fix the charges therefor, and make all needful rules in relation thereto, and the use thereof."

The trial court carefully analyzed section 391.8 and properly concluded it authorizes charges by the city for the cost of administration of the hook-up regulations; such as issuance of permit, inspection fees and cost of keeping records. It concluded the section did not authorize hook-up or connection fees to be used as a method of financing to retire the cost of construction.

We need not extend this opinion by a long analysis of the section or an extended set of definitions of the words employed by the legislature. We think a fair reading of the statute impels the conclusion the section deals only with costs and regulations incident to a line running from the middle of the street to the curb line so that a newly laid street will not be unnecessarily disturbed, and if it is disturbed, so that it will be properly repaired. It has nothing to do with and cannot be used as a basis for financing the overall project. Factual situations relevant to section 319.8 are found in such cases as Seymour v. City of Ames, 218 Iowa 615, 255 N.W. 874 and Toben v. Town of Manson, 192 Iowa 1127, 185 N.W. 984.

The definitions contained in section 391.14 do not affect our interpretation of 391.8. Section 391.14 provides: "Adjacent property and main sewer. All such lots which may be furnished with sewer connections or drained by such main sewer or sewer system, shall be considered as adjacent property.

"A main sewer shall be held to mean any sewer that is commonly referred to by any one of the following terms; 'intercepting sewer', 'outfall sewer', or 'trunk sewer'." That definition is made in connection with assessment procedures. But even if it is applied to 391.8 it does not change what we deem the obvious purpose of the latter section; i. e., to control the physical and limited act of street sewer connections for regulatory, not cost retirement, purposes.

III. Defendant argues strenuously the trial court's opinion and the reasoning we use here is a return to the old "Dillon Rule" of strict construction of powers granted by the legislature to municipalities, see Richardson v. City of Jefferson, 257 Iowa 709, 713, 134 N.W.2d 528, and this is contra to chapter 235, Laws of the 60th General Assembly (now the second paragraph of Iowa Code, 1966, section 368.2). The amendment specifically mandates liberal construction of such statutes in favor of the municipality. We set forth the first section of the amendment with the sentences numbered for convenient reference.

"[1] It is hereby declared to be the policy of the state of Iowa that the provisions of the Code relating to the powers, privileges, and immunities of cities and towns are intended to confer broad powers of self-determination as to strictly local and internal affairs upon such municipal corporations and should be liberally construed in favor of such corporations. [2] The rule that cities and towns have only those powers expressly conferred by statute has no application to this Code. [3] Its

provisions shall be construed to confer upon such corporations broad and implied power over all local and internal affairs which may exist within constitutional limits. [4] No section of the Code which grants a specific power to cities and towns, or any reasonable class thereof, shall be construed as narrowing or restricting the general grant of powers hereinabove conferred unless such restriction is expressly set forth in such statute or unless the terms of such statute are so comprehensive as to have entirely occupied the field of its subject. [5] However, statutes which provide a manner or procedure for carrying out their provisions or exercising a given power shall be interpreted as providing the exclusive manner of procedure and shall be given substantial compliance, but legislative failure to provide an express manner or procedure for exercising a conferred power shall not prevent its exercise. [6] Notwithstanding any of the provisions of this section, cities and towns shall not have power to levy any tax, assessment, excise, fee, charge or other exaction except as expressly authorized by statute."

Richardson v. City of Jefferson, supra, considered the import of the foregoing amendment at length. We there held the amendment is a rule of construction and as such it is constitutional. As to sentences five and six which are particularly applicable here we said: "The fifth sentence does no more than provide that the manner or procedure where provided shall be substantially followed and that a granted power shall not fail because of the lack of an express manner or procedure for its exercise. This is declaratory of existing law. Baird v. Webster City, 256 Iowa 1097, 1103, 130 N.W.2d 432, 436; Incorporated City of Humboldt v. Knight, 255 Iowa 22, 120 N.W. 2d 457; and City of Des Moines v. Reiter, 251 Iowa 1206, 1212, 102 N.W.2d 363, 367.

"The sixth sentence, for the purposes of this case, means exactly what it says, 'cities and towns shall not have power to levy any tax, assessment, excise, fee, charge or other exaction except as expressly authorized', it is a limitation, neither a grant of power nor a rule of construction."

Both sentences five and six require the result reached by the trial court. They do no necessarily reinvoke the former rules of construction prevalent before adoption of the amendment. They provide their own rules of construction which for the areas mentioned require narrower interpretation than that mandated by the first three sentences of the amendment.

Here two methods of financing are supplied. They must be held to be exclusive. Here a fee, charge or other exaction is being levied without express authorization. Under either sentence five or six the levy is illegal.[1]

At 13 Drake Law Review 53 an extensive analysis of the amendment to section 368.2 appears under title *"Home Rule" For Iowa Cities And Towns?*. In discussing the fifth sentence quoted above the author uses a factual situation identical to this case: "The quoted sentence [5] is a definite limitation upon any proposed construction that would declare House File 380 a 'home rule' act. Consider a few of the more familiar fields of local endeavor. Municipalities cannot devise a new way of assessing public improvements because the 'manner of procedure' is spelled out in great detail in Chapters 391, 391A and 417 of the Code and, therefore, falls within the quoted exception."

■ IV. Defendants' affirmative defense cannot avail them here. The city says in effect that even though the ordinance is invalid plaintiffs are estopped from challenging its validity.

---

1. We are aware of the amendment to Chapter 393 passed in 1967, Acts of Regular Session, 62nd General Assembly, Chapter 332, which, with certain restrictions, allows sewer connection charges very much as contemplated by the instant ordinance. However, this amendment was passed after the ordinance and defendant does not argue it is applicable here.

In O'Brien v. Wheelock, 184 U.S. 450, 489, 22 S.Ct. 354, 369, 46 L.Ed. 636 (1901) the United States Supreme Court said: "We are unwilling to assent to the doctrine of legislation by estoppel." The Florida Supreme Court in City of Miami Beach v. E. J. Smith Co., 90 So.2d 312 said: "[W]e do not think this principle [estoppel] should be applied where to do so would extend the power and authority of a city beyond that lawfully granted to it by the Legislature." See also Eastern Illinois State Normal School v. City of Charleston, 271 Ill. 602, 111 N.E. 573, L.R.A.1916D, 991; Ladnier v. Mollere, 230 La. 784, 89 So.2d 301; 38 Am.Jur., Municipal Corporations, section 668, p. 374.

Defendants rely on St. Louis Malleable Casting Company v. George C. Prendergast Const. Co., 260 U.S. 469, 43 S.Ct. 178, 67 L.Ed. 351, where plaintiff connected to a sewer and then challenged the assessment procedures alleging violation of due process. The United States Supreme Court held plaintiff estopped from challenging the constitutional validity of the proceedings where it had accepted the benefits of the project. But the court distinguished O'Brien v. Wheelock, supra, with the following comment, "It is not attempted here, as there [in O'Brien], to enforce a law as of validity by estoppel to particular persons, though invalid, under the Constitution of the state, to all of the world besides."

As we interpret St. Louis Malleable Casting Company v. George C. Prendergast Const. Co., supra, it would not allow an invalid ordinance to be held valid by estoppel. The case was concerned with the due process validity of the assessment proceedings. Not with the statute or ordinance itself. The distinction involves the power to act at all (which cannot be created by estoppel, O'Brien v. Wheelock, supra) and an illegal exercise of power with which the city has been clothed (which can be defended by claim of estoppel where factually justified, St. Louis Malleable Casting Company v. George C. Prendergast Const. Co., supra).

Here the ordinance clearly exceeds the city's statutory authority. Whatever may be its rights against plaintiffs based on contracted theories it cannot sustain its ordinances by estoppel.

Affirmed.

All Justices concur.