Jesse NEWMAN, Appellant,

v.

CITY OF INDIANOLA, a Municipal
Corporation, Appellee.

No. 56702.

Supreme Court of Iowa.

Aug. 29, 1975.

P. F. Elgin, of Elgin & Hoyman, Indianola, for appellant.

Darrell Goodhue and James F. Fowler, Indianola, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

Plaintiff, Jesse Newman, owns a mobile home park within the city of Indianola. Defendant City owns and operates the municipal electric utility and transmission lines for the production and sale of electrical services within Indianola and in effect has an exclusive franchise for the transmission and sale of electrical power. Charges for the sale of electrical power are made on a rate schedule fixed and determined by city ordinance.

Plaintiff petitioned for a declaratory judgment to determine the validity of charges made for the extension of electrical service to his mobile home park. The City counterclaimed for monies it claimed were due from plaintiff on account of the extension. The trial court found in favor of Indianola on its counterclaim and plaintiff appeals.

This case presents an uncomplicated factual situation. Plaintiff owns and operates the trailer court which has a maximum capacity of 64 trailers. In connection with this, water is provided to each unit as a part of the rental charge, but each trailer unit is separately metered for electric service. Plaintiff has built and continues to maintain the road system within the trailer park.

Mobile home parks are not a permitted use in Indianola's one and two-family residential zoning classifications but are permitted in the mixed residential zoning classification which also permits multiple dwellings.

August 26, 1971, at plaintiff's request, defendant extended its electrical transmission lines approximately 500 feet along the western border of Newman's mobile home park in order to provide service to three additional mobile home units.

The cost to the City to complete this extension of its system was $473.47 which was the fair and reasonable charge for the installation. Plaintiff, subsequently billed for this amount, has refused to remit payment.

Before plaintiff's request for this particular extension of the electrical transmission lines and the installation and completion thereof by defendant the Indianola city council unanimously adopted two relevant resolutions.

April 11, 1970, saw the adoption of "A Resolution Setting a Schedule of Charges for New Electrical Installations and Hookups in the City of Indianola, Iowa," wherein

it was provided, "the City of Indianola shall charge and collect from the developer, owner or builder the following amounts for all new electrical hook-ups or installations made with the city's electrical system after the date of this Resolution." (Exhibit A).

A schedule of charges was provided for overhead hookups, underground hookups, new subdivision hookups and installation of hookups requested through an unplotted or open area.

July 6, 1971, the city council adopted a resolution entitled "A Resolution Setting a Schedule of Charges for New Electrical Installations for Commercial, Industrial, and Multiple Dwelling Users in the City of Indianola, Iowa," wherein it was resolved "That any developer, builder or owner who obtains a new electrical installation and connection with the city's electrical system to service a commercial, industrial, or multiple dwelling facility shall pay to the city's electrical fund the total reasonable cost expended by the city in making the hookup." (Exhibit B).

In this resolution provision was made for furnishing an estimate for various types of hookups to be paid to the City before commencement of the installation. Any difference between the estimate and the actual cost was to be adjusted by allowance of credit or payment of additional charges.

These two resolutions, as well as a city ordinance, were the bases of the City's claim against defendant. Plaintiff's petition for declaratory judgment sought determination of the following:

"1. Propriety of charges for extensions of electrical lines within the City of Indianola, Iowa.

"2. The applicability of the Resolutions referred to as Exhibits A and B hereof to a mobile home park.

"3. Whether the seller of electrical power and services can charge for the sale of same in accordance with the rate schedule and also charge for extensions made to the transmission system which extensions are for the purpose of service of additional users."

The trial court found the City, in providing electric utility service, acts in a proprietary function; that it enjoys discretion whether to extend its transmission lines—as opposed to a public utility which does not—and that this discretion was not abused. It was held the two resolutions were applicable to mobile home parks, but declined to reach questions one and three "in view of the agreement by Plaintiff to pay for the work." The court placed " * * * its decision on the basis that there was a request by Plaintiff to Defendant to extend the service and pay the reasonable cost thereof, not on the power under Section 397.27 of the Code of Iowa."

In finding for defendant on its counterclaim, the trial court held the amount charged was reasonable.

It has been pointed out that the amount in controversy as shown by the pleadings in this matter was $473.47. Rule 333, Rules of Civil Procedure, provides:

"Amount in controversy. Except where the action involves an interest in real estate, no appeal shall be taken in any case where the amount in controversy, as shown by the pleadings, is less than one thousand dollars, unless the trial judge, within thirty days after the judgment or order is entered, certifies that the cause is one in which appeal should be allowed. The right of appeal is not affected by any remission of any part of the verdict or judgment."

Compliance with this rule is jurisdictional. *Benttine v. Jenkins Truck Lines, Inc.*, 182 N.W.2d 374, 376 (Iowa 1970) and *Bridal Publications, Inc. v. Richardson*, 229 N.W.2d 771, 773–774 (Iowa 1975).

In the present case plaintiff moved the trial court for a certificate permitting an appeal even though the amount in controversy is less than the jurisdictional amount fixed by the rule. The certificate was granted. Thus, there was compliance with the rule.

In this connection we point out issuance by the trial court of the certificate allowing an appeal does not preclude this court from making its own determination of the propriety of the issuance of such certificate. A review of the questions urged for consideration by this appeal convinces us the trial court was correct in this instance in issuing the certificate since those questions involve the future rights and obligations of both a city owning and operating a utility and of those customers requesting electrical service.

I. No complaint is directed toward the rate charged by the municipality for electrical power after installation of the service.

The question is whether a municipality owning and operating an electrical transmission system should be required to absorb as a normal operating cost the fair and reasonable initial cost of constructing as a part of its system an extension line to a distribution point within the established service area of the utility in order to provide a hookup point for additional users or should such costs be paid by the developer, owner or builder requesting such extension.

It was stipulated in the trial court that the only two methods available to the City for recovering the costs of electrical extensions to its transmission system were by increased rates or, if legal and valid, requiring the applicant desiring the extension to pay for the same. Plaintiff maintains costs of such extension are normal operating costs which must be considered in determining the reasonable rate or rent charged for the supply of electrical service but the City operating a power plant and transmission system in its proprietary function may not in addition to such rate for its service also charge for reasonable extensions made to the transmission system within its established service area which are for the purpose of service to additional users.

Of course, absorbing the expense of installation of such extensions of the transmission system through higher rates would spread the costs while charging specifically would place greater burdens on individual developers.

The trial court's decision requiring Newman to pay the reasonable costs of the extension was based on a theory of contract because there was a request by plaintiff to extend the services and pay the reasonable cost thereof, not under the power granted by section 397.27, The Code.

Plaintiff contends there is no support in the record for this theory. Although plaintiff concedes he requested an extension of the electrical service he points out that the record is void of any evidence he agreed to pay for the work.

The portion of the stipulation apparently relied upon by the trial court reads as follows: "That on or about the 26th day of August, 1971, at the request of the plaintiff, the defendant extended electrical services * * * for the purpose of serving three (3) additional mobile home units with electrical power. * * *."

As indicated, the factual circumstances leading to this lawsuit were stipulated. There is nothing in the stipulation which would support a finding plaintiff had *expressly* agreed to pay the reasonable costs for the extension involved. Thus, any agreement in order to serve as a basis for the court's theory must be one implied in fact.

Before determining whether such implied contract was established we turn to plaintiff's contention that section 397.27, The Code, as in effect at the time material hereto provided the exclusive methods of financing the expenses of running, operating, renewing and extending works operated by a municipality.

Chapter 397, The Code, repealed by the Second Session of the Sixty-fourth General Assembly, chapter 1088, section 199, effective July 1, 1975, established the power and authority of a city or town to establish utility services. Provisions relevant to the instant case are:

"397.1 Cities and towns may purchase. Cities and towns shall have the power to

purchase, establish, erect, maintain, and operate within or without their corporate limits, * * * electric light or power plants, with all the necessary reservoirs, mains, filters, streams, trenches, pipes, drains, poles, wires, burners, machinery, apparatus, and other requisites of said works or plants, and lease or sell the same."

"397.27 Sale of products—rates—taxes —equipment. They may sell the products of municipal heating plants, waterworks, gasworks, or electric light or power plants to any municipality, individual, or corporation outside the city or town limits, as well as to individuals or corporations within its limits, and may with the consent of the board having jurisdiction thereof erect in the public highway the necessary poles upon which to construct transmission lines; and shall, from time to time in such manner as they deem equitable, assess upon each tenement or other place supplied with heat, water, gas, light, or power, reasonable rents or rates fixed by ordinance, and shall levy a tax as provided by law to pay or aid in paying the expenses of running, operating, renewing, and extending such works, and the interest on any bonds issued to pay all or any part of their construction."

Plaintiff insists section 397.27 does not authorize a specific charge to a customer for extension costs and, thus, such a charge is contrary to the statute, as "grants of power to municipalities by the Legislature are strictly construed against the authority claimed."

At the outset, it should be noted the home-rule act had not taken effect at the time of this transaction or passage of the ordinance and resolutions. However, section 368.2, The Code, as it appeared at the time the ordinance and resolutions were passed, and as it was to be read until July 1, 1975, provides in pertinent part:

" * * *

"It is hereby declared to be the policy of the state of Iowa that the provisions of the Code relating to the powers, privileges, and immunities of cities and towns are intended to confer broad powers of self-determination as to strictly local and internal affairs upon such municipal corporations and should be liberally construed in favor of such corporations. The rule that cities and towns have only those powers expressly conferred by statute has no application to this Code. Its provisions shall be construed to confer upon such corporations broad and implied power over all local and internal affairs which may exist within constitutional limits. No section of the Code which grants a specific power to cities and towns, or any reasonable class thereof, shall be construed as narrowing or restricting the general grant of powers hereinabove conferred unless such restriction is expressly set forth in such statute or unless the terms of such statute are so comprehensive as to have entirely occupied the field of its subject. However, statutes which provide a manner or procedure for carrying out their provisions or exercising a given power shall be interpreted as providing the exclusive manner of procedure and shall be given substantial compliance, but legislative failure to provide an express manner or procedure for exercising a conferred power shall not prevent its exercise. Notwithstanding any of the provisions of this section, cities and towns shall not have power to levy any tax, assessment, excise, fee, charge or other exaction except as expressly authorized by statute. * * *." (Repealed by the Second Session of the Sixty-fourth General Assembly, chapter 1088, section 199, effective July 1, 1975).

Plaintiff places heavy reliance upon *Clarke, Inc. v. City of Bettendorf*, 261 Iowa 1217, 158 N.W.2d 125 in support of his contention that where the legislature has specifically provided for financing the municipality is required to operate exclusively within those powers. Plaintiffs in the cited case sought a declaratory judgment decreeing an ordinance invalid which provided for a "connection fee" for hookups to the city sewer system. The supreme court upheld the trial court's invalidation of the ordinance, finding there were two methods only

by which cities could finance the construction, reconstruction or repair of sewers—general obligation bonds, and assessment of adjacent lots to finance construction of "main sewer or system of main sewers." These sources, it was held, did not authorize fees for a hookup, "the excess to be used to finance initial construction."

The only other provision allowing charges was section 391.8, which provided the city "* * * shall have power to require the connections from gas, water, and steam-heating pipes, sewers, and underground electric construction, to the curb line of adjacent property, to be made before the permanent improvement of the street and, if such improvements have already been made, to regulate the making of such connections, fix the charges therefor, and make all needful rules in relation thereto, and the use thereof." *Id.* at 1221, 158 N.W.2d at 127.

The court concluded: "* * * We think a fair reading of the statute impels the conclusion the section deals only with costs and regulations incident to a line running from the middle of the street to the curb line so that a newly laid street will not be unnecessarily disturbed, and if it is disturbed, so that it will be properly repaired. It has nothing to do with and cannot be used as a basis for financing the overall project. * * * [citing authorities]." *Id.* at 1221, 158 N.W.2d at 127.

Section 397.27, The Code, in addition to granting cities and towns the power to issue revenue bonds (section 397.8), allows them to "* * * assess upon each tenement or other place supplied with * * * light, or power, reasonable rents or rates fixed by ordinance, and shall levy a tax as provided by law to pay or aid in paying the expenses of running, operating, renewing, and extending such works, * * *."

In the present case the City did not seek to recover the initial cost of installing the electrical extension line to Newman's property by increasing the charge for a kilowatt hour of electricity—one of the two methods stipulated by the parties as being available to the City for recouping such expenditure. It sought to require the applicant desiring the extension to pay the fair and reasonable cost thereof—the other method available to the City for recovering such cost.

Thus, the question is whether the method employed by the City of assessing a place supplied with electrical power is a legal and valid method for recovering the cost of the extension.

In connection with plaintiff's argument that the charge of $473.47 was not authorized by section 397.27 we point out the charge made by Indianola was not made for the purpose of financing the overall cost of the construction of its transmission system as proscribed in *Clarke, Inc. v. City of Bettendorf*, 261 Iowa at 1221, 158 N.W.2d at 127. It was a charge for the fair and reasonable cost of providing a distribution point 500 feet from the existing line of the utility to afford a hookup facility for the purpose of supplying Newman's trailer court with light and power.

It is our view the method employed by the City for recovering the cost of the extension from Newman was a legal and valid method permitted under that portion of section 397.27 which authorizes a city to assess a reasonable rate fixed by ordinance upon each tenement or other place supplied with light or power. The method employed was not an attempt to levy a tax. There is a distinction between "taxes" and "assessments." "* * * A tax is a charge to pay the cost of government without regard to special benefits conferred." *In Re Trust of Shurtz*, 242 Iowa 448, 454, 46 N.W.2d 559, 562.

In *Bennett v. Greenwalt*, 226 Iowa 1113, 1134, 286 N.W. 722, 732, the following statement from *Cornelius v. Kromminga*, 179 Iowa 712, 715, 161 N.W. 625, 626 is quoted: "If assessments of this class were to be treated as 'taxes' in the usual and ordinary meaning of that word, a different conclusion would doubtless have to be reached, but while, generally speaking, special as-

sessments are generally imposed by an exercise of the taxing power, yet a clear distinction is everywhere recognized between a 'tax' in the proper sense of the word and a 'special assessment.' The former may be said to be a contribution or levy imposed upon property for general public purposes without regard to the question of special benefits conferred, while the latter is imposed only as a payment for special benefits conferred upon the property charged by an improvement the expense of which is thus to be met."

Plaintiff's contention section 397.27 does not authorize the imposition of the specific charge made to Newman for the cost of extending the electric line is without merit.

II. Plaintiff contends the resolutions identified in the record as exhibits A and B are not applicable to a mobile home park since a mobile home is clearly a single family residential user. He maintains the trial court erred in holding otherwise. However, plaintiff cites no authority in support of this assignment.

 This court has frequently held that we are under no compulsion to review any assignment of error when the complaining party cites no authority in support of his argument. The assignment is deemed waived. *State v. Mattingly*, 220 N.W.2d 865, 871 (Iowa 1974) and authorities cited; *State v. Scovill*, 224 N.W.2d 221, 223 (Iowa 1974); *State v. King*, 225 N.W.2d 337, 342 (Iowa 1975).

III. The question remains whether there is support in the record for the trial court's contract theory referred to in division I, supra, as a basis for permitting the defendant to recover from Newman judgment for the sum of $473.47.

A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct. See Restatement, Second, Contracts, section 5, Tentative Draft Nos. 1–7.

This statement of principle quoted in 1 Corbin on Contracts, section 18, n. 42, is relevant:

"Contracts may be express or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one." *Shelly v. Bristol Sav. Bank*, 63 Conn. 83, 26 A. 474, 475.

It was stipulated Newman requested the City to extend the service a distance of 500 feet in order to serve additional mobile home spaces. His conduct in making such request was effective as a manifestation of his assent to pay the fair and reasonable cost for such service. There was an implied contract.

The court concludes the trial court was correct in holding Newman was to pay the cost of the extension.

The case is therefore—Affirmed.

MOORE, C. J., and REYNOLDSON and HARRIS, JJ., concur.

LeGRAND, J., concurs in the result.