**Ferd NESLER, Appellant,**

v.

**FISHER AND COMPANY, INC., and Plastic Center, Inc., Appellees.**

No. 88–858.

Supreme Court of Iowa.

Feb. 21, 1990.

192

Tom Riley, Cedar Rapids, for appellant.

Patrick M. Roby and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, and Alfred E. Hughes, Dubuque, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Ferd Nesler sued Fisher and Company, Inc., and Plastic Center, Inc., for interference with existing and potential business contracts (or advantages) based on Restatement (Second) of Torts sections 766A and 766B (1979). He recovered compensatory damages of $576,476 and punitive damages of $100,000; however, the district court granted the defendants' motion for judgment notwithstanding the verdict on the ground of insufficient evidence on the key elements of his claims. We reverse and remand.

In our review of a trial court ruling on a motion for judgment notwithstanding the verdict, the question is whether the evidence, when viewed in the light most favorable to the plaintiff, was sufficient to generate a jury question. *Watson v. Lewis*, 272 N.W.2d 459, 461 (Iowa 1978).

When viewed in that light, the evidence reveals the following events. In 1981, Nesler purchased a building in downtown Dubuque for the purpose of renovation and leasing to commercial and governmental tenants. His plan was to syndicate the building by selling shares to investors at a profit and to later manage the building for a fee. Within a year, Nesler received tentative commitments from several county agencies to relocate their offices to the refurbished building, which was to be called Nesler Centre. These commitments were subject to the approval of the Dubuque County Board of Supervisors.

Louis Pfohl, an attorney in New York City and an owner of substantial property in Dubuque, was president of the defendant corporations, which owned space previously leased to the county. After learning that the board of supervisors was considering the approval of relocation of the county offices to the Nesler Centre, Pfohl dropped his rental to a figure below what Nesler had offered.

The board of supervisors, in October 1982, approved the proposed move. Twelve county agencies, all of which had either been occupants of buildings owned by the defendants or interested in leasing from them, decided to locate at the Nesler Centre. Pfohl, angry at the action by the board of supervisors, predicted that Nesler would not complete his renovation on time and offered to bet each of the supervisors $1000 on it. Pfohl also stated that Nesler would "pay" for taking his tenants.

Shortly after the board's approval of the office relocations, Pfohl sued the board, claiming that it was required by law to accept his rental bid, which was slightly lower than Nesler's. The action was summarily dismissed by the trial court, and Pfohl's corporations appealed. We ruled that the statutory requirements for accepting low bids did not apply to rentals. *Fischer and Co. v. Hayes*, 364 N.W.2d 237, 239–40 (Iowa 1985).

There was substantial evidence that Pfohl began a strategy of repeated trips to the Nesler Centre, then under reconstruction, and to the city building department for the purpose of pressuring the building inspector to take action against the project. The effect was to impede the progress of the restoration of Nesler Centre.

There was also evidence that Pfohl persuaded one of his tenants, Handicapped Persons, Inc., to file a lawsuit against Nesler and several government agencies to challenge the failure of the Nesler Centre to provide adequate handicapped access. Pfohl's attorney brought the action on behalf of Handicapped Persons without charge to it. This case, which was the only work that Pfohl's attorney had ever done for Handicapped Persons, was dismissed on the pleadings. The jury could infer that the suit was encouraged, and paid for, by the defendants.

Throughout all of this time, local news media reported on the inspections and the alleged building code violations. People in the community began to express doubts about the Nesler Centre and about the problems Nesler was having in completing the project. Nesler claims the effect of this was to undermine confidence in his project, leading to his failure to finance it through a bank loan or syndication.

Nesler alleged that, had it not been for the interruptions caused by Pfohl, the

project would have been substantially completed on time. He testified that, prior to the problems he experienced over the Nesler Centre, he had been a successful real estate developer and had never experienced problems with syndicating or financing similar projects.

Potential investors told Nesler that they were concerned about the lawsuit against the county board of supervisors and that if Nesler lost the lawsuit he would lose his tenants. Investors were also concerned about the Handicapped Persons suit, fearing that an adverse result might affect the income for the project.

The Dubuque Bank and Trust, which had loaned Nesler $450,000 for the project in March of 1983, refused to provide further financing when his plan to syndicate ran into problems. The bank told Nesler that it was because of the lawsuits. When potential investors and the bank withdrew from the project, Nesler had no alternative but to deed his equity in the Nesler Centre to the bank. As a result, he claims he lost a substantial amount of money that he would have obtained on its sale, that he lost potential management fees, and that he suffered severe emotional distress. The jury apparently agreed.

## I. *The Judgment Notwithstanding the Verdict.*

In granting the defendants' motion for judgment notwithstanding the verdict, the district court stated: "The court has been most reluctant to grant this motion, because it is convinced, as was the jury, that the defendants, acting through their president [Pfohl], were clearly motivated by an intention to harm plaintiff in some way." Despite this reluctance, the judgment for the plaintiff was set aside.

■ A. *Interference with existing contracts.* We first address the judgment notwithstanding the verdict on Nesler's claim for interference with an existing contract under Restatement (Second) of Torts section 766A. Nesler had two types of existing contracts as to which he claimed interference: his contract to purchase the building and his lease agreements with future tenants. In setting aside Nesler's judgment on this claim, the court observed that Nesler had introduced no evidence of interference because the owners of the building which Nesler was buying on contract, and the potential tenants of the Nesler Centre were still willing to perform, even after the acts of the defendants had occurred.

Nesler contends that this was error because his claim was based on intentional interference with *his* ability to perform, not the ability of the other contract parties, *i.e.,* the sellers under Nesler's land contract and the potential lessees of Nesler Centre. Nesler contends that the court's ruling shows that it confused Restatement section 766A, on which his claim was based, with section 766, which is not involved.

Restatement (Second) of Torts section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the *third person* not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the *third person* to perform the contract.

(Emphasis added.) Section 766A of the Restatement applies to different parties. It provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing *the other* [here Nesler] from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

(Emphasis added.)

The court apparently had section 766A in mind when it charged the jury, in Instruction 11, that "the interference [claimed] prevented *Nesler* from performing the contract to buy the Nesler Centre and caused Nesler to lose the benefit of the leases of

space in the Nesler Centre." (Emphasis added.)

Also, Nesler's evidence was aimed at liability under section 766A, not section 766. His evidence was that, by reason of the actions of Pfohl and his corporations, *Nesler* was prevented from completing payment on the contract for the purchase of the building, on which he still owed a substantial amount, and from completing the contracts with his potential lessees. He did not show, or even contend, that the contract sellers or his potential lessees were prevented from performance.

In this case, there was substantial evidence that the defendants' actions, including the lawsuits, the building department inspections, the publicity, and the resulting loss of investor and bank confidence prevented Nesler's own performance of the contract and lease agreements. This is the gist of an action under section 766A. It is immaterial in a claim under section 766A whether other parties were prevented from performance. The Restatement explains the distinction:

> This Section [766A] is concerned only with the actor's intentional interference with the plaintiff's performance of his own contract, either by preventing that performance or making it more expensive or burdensome. It is to be contrasted with § 766, which states the rule for the actor's intentional interference with a third person's performance of his existing contract with the plaintiff.

Restatement (Second) of Torts § 766A, comment *a*.

Because there was substantial evidence of interference with Nesler's own performance, it was error to enter a judgment notwithstanding the verdict.

■ B. *Interference with potential contracts.* Nesler also asserted a claim of interference with *prospective* business advantage or contract under the Restatement section 766B, which provides:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from

loss of the benefits of the relation, whether the interference consists of

> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

> (b) preventing the other from acquiring or continuing the prospective relation.

The court granted a judgment notwithstanding the verdict on this claim on the ground of insufficient evidence. It noted that Nesler had no binding contract with his bank to grant him the necessary financing and that he had not actually commenced his syndication activity by contacting potential investors until after most of the defendants' actions had occurred. Furthermore, the court ruled, Nesler did not show that the defendants had knowledge of his potential business advantage at the time of the defendants' activities, as required by the Restatement.

In moving for judgment notwithstanding the verdict, the defendants contended that the only evidence of the element of defendants' knowledge was Nesler's own testimony, which was too speculative to submit the issue to the jury. As already noted, there was evidence that the defendants, acting through Pfohl, caused delays in the completion of the renovation and that their activities caused a public perception which prevented Nesler from syndicating the project or obtaining long-term financing. Nesler, who had substantial experience in the area of development and syndication, testified to the likelihood of obtaining favorable results in his project, and this was sufficient to take the case to the jury.

Regarding the question of whether defendants knew of the prospective contracts at the time their alleged acts took place, it is true that most of their acts predated Nesler's actual contacts with potential investors in connection with the syndication. But financing of the project, whether by syndication or bank loan, in and of itself, was not the prospective business advantage affected. The prospective business advantage was much broader than that; it ultimately was to result in the completion

of the project and the sale of the building. Financing through syndication or other means was only a part of the plan. There was abundant evidence from which the jury could find that the defendants, through Pfohl, were aware from the beginning that some plan for financing was necessary. While they might not have been aware at the outset as to just how it was to be financed, this was not the critical point. The jury could conclude that the defendants had reason to know that the potential contracts, which Nesler claims he lost, were necessary to the completion of such a project.

It was also error for the district court to conclude that a binding contract was necessary for a claim of interference with prospective business advantage. A claim under section 766B may be based on a prospective relationship that has not yet been reduced to contract. Restatement (Second) of Torts § 766B, comment *a*.

We hold it was error for the trial court to grant the judgment notwithstanding the verdict on Nesler's claim of interference with the potential contracts. This brings us to the new trial issues.

## II. *New Trial Issues.*

Because we reverse on the judgments notwithstanding the verdict, it is necessary to determine whether we should simply order the reinstatement of Nesler's original judgment or grant a new trial on the basis of other errors urged by the defendants. We conclude that a new trial must be granted because of several errors to be discussed later. First we must address a procedural matter.

■ The defendants moved for a new trial as well as for judgment notwithstanding the verdict. The district court did not initially rule on the new trial motion but did so after this court ordered a limited remand. The new trial motion was then denied. The judgment notwithstanding the verdict having been granted, the new trial motion was moot. Under these circumstances, a defendant may challenge the overruling of a motion for new trial without filing a cross-appeal. *See Loudon v.*

*Hill,* 286 N.W.2d 189, 191–92 (Iowa 1979); Iowa R.Civ.P. 248(a). We thus address the new trial issues.

■ A. *The court's instructions.* 1. The defendants complain that Instruction 18 was improper because it erroneously appeared to create a cause of action based solely on malice. This instruction stated:

An act which is legally right when done without malice may become legally wrong when done with malice. One engaged in business may lawfully indulge in the sharpest competition with those in like business and may use any fair means to secure business. Yet, when a defendant acts with malice to inflict injury upon his rival's business, his conduct becomes illegal and he is liable to the plaintiff for any damages for injury caused the plaintiff.

Malice means an act or acts done with spite or with a willful disregard for the rights of the plaintiff.

The defendants contend that this instruction creates a new tort in which a finding of malice would make any act per se actionable. "Malice," for purposes of interference claims, bears on intent and lack of justification. Restatement (Second) of Torts §§ 766, comment *s*; 766A, comment *f*; 766B, comment *f*. Malice, as such, is not an element of a claim of interference. *See id.* Yet, the court's Instruction 18 suggested that an act maliciously done could be an independent basis for liability for interference. We agree that it was error to give this instruction without further explanation.

■ 2. The defendants also object to the court's Instructions 11 and 12 on the effect of defendants' prior lawsuits and complaints to the building inspectors. The elements of interference with an *existing* contract, Restatement (Second) of Torts § 766A, were set out in the following language in Instruction 11:

To recover on his claim for interference with existing contracts, plaintiff Ferd Nesler must prove all of the following propositions:

1. Nesler had a contract for the purchase of the Nesler Centre from Jim and Tom Nesler and contracts for lease of space in the Nesler Centre.

2. The defendants knew of the contracts.

3. The defendants intentionally and improperly interfered with the contracts in one or more of the following ways:

(a) by causing the city building inspector to make excessive and unnecessary inspections of the Nesler Centre;

(b) by filing a lawsuit challenging the awarding of the leases to Nesler; or

(c) by influencing Handicapped Persons, Inc., to file a lawsuit against Nesler.

4. The interference prevented Nesler from performing the contract to buy the Nesler Centre and caused Nesler to lose the benefit of the leases of space in the Nesler Centre.

5. The amount of damage.

If plaintiff has failed to prove any of these numbered propositions, plaintiff is not entitled to damages. If plaintiff has proved all of these propositions, the plaintiff is entitled to damages in some amount.

Instruction 12, which was based on interference with a *prospective* contract, is basically the same except that the court substituted the words "prospective business relationship" for "contract."

The defendants object to Instructions 11 and 12 because, they claim, Pfohl's lawsuits and building complaints were merely exercises of his legal rights and could not constitute improper interference with a contract.

An interference claim must show that it was intentional *and* that it was improper. *See* Restatement (Second) of Torts § 766A, comment *e*. The word "intent" is used throughout the Restatement in the sense that the actor desires to cause the consequences of his act or that he believes that the consequences are substantially certain to result from it. *See* Restatement (Second) of Torts § 766A, comment *e*. Intent and motive should not be confused, however. Motive or purpose determines whether the interference was improper. The Restatement provides this distinction:

Since interference with contractual relations is an intentional tort, it is required that in any action based upon §§ 766, 766A or 766B the injured party must show that interference with his contractual relations was either desired by the actor or known by him to be a substantially certain result of his conduct. (*See* § 8A) Intent alone, however, may not be sufficient to make the interference improper, especially when it is supplied by the actor's knowledge that the interference was a necessary consequence of his conduct rather than by his desire to bring it about. In determining whether the interference is improper, it may become very important to ascertain whether the actor was motivated, in whole or in part, by a desire to interfere with the other's contractual relations. If this was the sole motive the interference is almost certain to be held improper. A motive to injure another or to vent one's ill will on him serves no socially useful purpose.

The desire to interfere with the other's contractual relations need not, however, be the sole motive. If it is the primary motive it may carry substantial weight in the balancing process and even if it is only a casual motive it may still be significant in some circumstances. On the other hand, if there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional, but the factor of motive carries little weight toward producing a determination that the interference was improper.

Restatement (Second) of Torts § 767, comment *d*.

This case is quite unique in that none of the defendants' acts were tortious in themselves. As the defendants point out, they had a legal right to file or encourage lawsuits and to lodge complaints with the city building inspector. But they may not do so with impunity, as they seem to suggest. It

all depends on their motivation. Instructions 11 and 12 stated that the plaintiffs must show that the defendants "intentionally and improperly" interfered with the plaintiff's contracts or prospective contracts. However, they did not define "improper" nor did they explain the circumstances under which otherwise legal acts, such as the filing of complaints or civil suits, may constitute interference. Without such guidance, the jury would be free to find interference based solely on the filing of the lawsuits and the building complaints without regard to the motivations behind them.

In this respect, the Restatement is instructive. It states:

> *Prosecution of civil suits.* In a very early instance of liability for intentional interference, the means of inducement employed were threats of "mayhem and suits," and both types of threats were deemed tortious. Litigation and the threat of litigation are powerful weapons. When wrongfully instituted, litigation entails harmful consequences to the public interest in judicial administration as well as to the actor's adversaries. The use of these weapons of inducement is ordinarily wrongful *if the actor has no belief in the merit of the litigation or if, though having some belief in its merit, he nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.* A typical example of this situation is the case in which the actor threatens the other's prospective customers with suit for the infringement of his patent and either does not believe in the merit of his claim or is determined not to risk an unfavorable judgment and to rely for protection upon the force of his threats and harassment.

Restatement (Second) of Torts § 767, comment *c* (emphasis added) (citation omitted). Thus, an improper motive for these purposes means a state of mind which causes a person to pursue a legal remedy in the absence of a good-faith belief in the merits of the litigation. Even if the person has some belief in its merits, if the suit was nevertheless instituted or threatened in bad faith with the intention only to harass other persons and not to bring the complaint or lawsuit to definitive adjudication, it may be actionable. *Id.*

Similarly, the defendants' motive in making the complaints to the building inspector must be examined by the jury. Making the complaint by itself is not improper; however, when the act is done with a desire to interfere with contractual relations, the motive behind the act rather than the act itself is determinative. *See* Restatement (Second) of Torts § 767, comment *d.*

Iowa Uniform Instruction 1200.1, reflecting the holding of our cases, sets out the elements of intentional interference with an existing contract:

**Intentional Interference With Contract—Essentials For Recovery.** Plaintiff must prove all of the following propositions:

1. The plaintiff had a contract with [name of third person.]

2. The defendant knew of the contract.

3. The defendant intentionally and improperly interfered with the contract by [set out the particulars supported by the evidence.]

4. The interference caused [ (name of third person) not to perform the contract] [plaintiff not to perform the contract] [or]

4a. The interference caused plaintiff's performance of the contract to be more burdensome or expensive.

5. The amount of damage.

*See generally, Wolfe v. Graether,* 389 N.W.2d 643, 659–60 (Iowa 1986); *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 402–03 (Iowa 1982).

Iowa Uniform Instruction 1200.2 sets forth the elements of a claim for interference with a prospective business advantage in the following language:

**1200.2 Intentional Interference With Prospective Business Advantage—Essentials For Recovery.** Plaintiff must prove all of the following propositions:

1. The plaintiff had a prospective [contractual relationship] [business relationship] with [name of third person.]

2. The defendant knew of the prospective relationship.

3. The defendant intentionally and improperly interfered with the relationship by [set forth the particulars supported by the evidence].

4. The interference caused [name of third person] not [to enter] [to continue] the relationship [or]

4a. The interference prevented the plaintiff from [entering] [continuing] the relationship.

5. The amount of damage.

*See generally, Gordon v. Noel,* 356 N.W.2d 559, 563 (Iowa 1984); *Harsha v. State Bank,* 346 N.W.2d 791, 799 (Iowa 1984).

In respect to the element of "improper" interference in both Uniform Instructions 1200.1 and 1200.2, Iowa cases have defined the term differently in claims involving interference with a *prospective* business advantage and those involving interference with an *existing* contract. *See Page County Appliance Center v. Honeywell,* 347 N.W.2d 171, 177 (Iowa 1984). In a claim of interference with a prospective business advantage, the "purpose on the defendant's part to financially injure or destroy the plaintiff is essential." *Id.; see also Farmers Co-op. Elevator, Inc., Duncombe v. The State Bank,* 236 N.W.2d 674, 679 (Iowa 1975). In *Farmers Co-op.,* we stated:

> The role of the actor's purpose is considerably different in cases involving loss of existing contracts than in cases involving loss of prospective advantage. In cases of interference with existing contracts, a purpose to injure or destroy is not essential. The situation is different in cases involving interference with prospective advantage.

236 N.W.2d at 679 (citation omitted).

On retrial, the jury should be instructed that the acts as specified in Instructions 11 and 12 may be the basis of liability only if they are intentional and improper, as defined above. Restatement (Second) of Torts sections 767 through 774 also provide guidance.

■ 3. The defendants object to the court's instruction on lost profits and lost management fees on the ground that they were too speculative, being based solely on Nesler's testimony and his inferences from an accountant's report. We disagree. While the jury would be entitled to discount this testimony because of Nesler's interest in the outcome, it is nevertheless entitled to some weight.

■ B. *Evidence rulings.* Because a retrial is required, we address several evidence rulings which will likely recur. The defendants contend that the trial court erred in allowing allegedly hearsay testimony by Nesler as to statements made to him by prospective lessees and bank officers about their reasons for refusing to continue their negotiations with him. He testified that in each case he was advised that the declarant's reasons for refusing to continue their relationship with him were the lawsuits and other problems which Nesler claimed were stirred up by the defendants. Nesler contends that this testimony falls under an exception to the hearsay rule because it was introduced to show the state of mind of the declarants. *See* Iowa R.Evid. 803(3). The declarants' reasons for their refusal to continue further negotiations with Nesler, we believe, fall under the exceptions of this rule, and the court did not err in admitting Nesler's testimony about them.

■ C. *Claim for emotional distress.* The defendants object to the submission of Nesler's claim for damages for emotional distress. The evidence showed that Nesler experienced marital difficulties, depression, and that he attempted suicide. The defendants claim that this evidence was not sufficient because it was unsupported by medical testimony. They also point out that there is no claim of outrageous conduct on the part of the defendants.

In regard to the last objection, it should be noted that this claim was not filed as a separate claim of intentional infliction of emotional distress in which outrageous conduct is an ingredient, but rather as an

element of damage in a tort case with independent grounds of liability. *See Niblo v. Parr Mfg. Co.*, 445 N.W.2d 351, 357 (Iowa 1989); *Peterson v. First Nat'l Bank*, 392 N.W.2d 158, 168 (Iowa App.1986). There was sufficient evidence, even without medical testimony, from which a jury could conclude that Nesler suffered severe emotional distress from the interference, and we hold that it was a proper element of damage, despite the defendants' protestation that such an element of damage should not be allowed in a commercial interference case. *See Peterson*, 392 N.W.2d at 167 (emotional distress in commercial tort case based on an interference claim). *See also* Restatement (Second) of Torts § 774A(1)(c).

We have examined all of the arguments made and, with the exception of those discussed, find no merit to them. We reverse the court's order for judgment notwithstanding the verdict and its denial of a new trial and remand to the district court for a new trial.

REVERSED AND REMANDED.