**FIRST MEDICAL, INC. and Omega Pharmacy, P.C., Appellants,**

v.

**EMBASSY MANOR CARE CENTER, INC., n/k/a Newton Health Care Center; Quality Health Care Center, Inc., n/k/a Urbandale Health Care Center, Inc.; and Five Star Quality Care Corp., d/b/a Parkview Manor, Appellees.**

No. 91–896.

Court of Appeals of Iowa.

Jan. 29, 1992.

Lawrence L. Marcucci and John C. Conger of Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellants.

Kendall R. Watkins, West Des Moines, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

HABHAB, Justice.

In 1986, Omega entered into agreements with defendants' nursing facilities whereby Omega became the consultant pharmacist and prime pharmaceutical supplier. At the time, defendants' nursing homes were operated by Ken Webb. Ken and JoAnn Webb then divorced. In August 1988, JoAnn Webb–Nye acquired ownership of the defendant nursing facilities in the divorce settlement. JoAnn Webb–Nye desired to end business relationships with vendors obtained by her former husband. She terminated the consulting pharmacy contracts with Omega Pharmacy and changed to Hammer Pharmacy.

Shortly thereafter, letters were mailed to the residents and families. They were advised Hammer Pharmacy would be the nursing facilities' consulting pharmacist or prime pharmacy vendor. The residents were advised to notify the defendants if they desired a certain pharmacy to supply their medication. Otherwise, defendants would assume Hammer Pharmacy would be the residents' pharmacy of choice.

Omega and First Medical, Inc. filed lawsuits against the defendants for breach of contract and intentional interference with prospective business advantage. The breach of contract claim is not involved in this appeal. The district court granted defendants' summary judgment motion. It held there was no evidence to indicate that defendants' motive in switching pharmacies was improper, i.e., done to financially injure or destroy Omega. Omega appeals.

Our review is for errors at law. Iowa R.App.P. 4.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); see *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Milne*, 424 N.W.2d at 423. The evidence must be viewed in the light most favorable to the resisting party. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986).

The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Id.; Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is

proper. *Gott*, 387 N.W.2d at 343; *Milne*, 242 N.W.2d at 423. If the motion is properly supported, however, the resisting party "must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ.P. 237(e).

We now turn to the law concerning intentional interference with prospective business relationships. The trial court's ruling on the summary judgment motion held Omega failed to show the necessary improper intent to harm Omega's prospective business relations. However, Omega contends the tort at issue is defined in the alternative: either improper motive *or* improper means could amount to intentional interference with prospective business relations.

Omega contends the defendants' means were improper. In this respect, Omega contends the *means* used by defendants in switching from Omega to Hammer were sufficiently egregious to allow an action for damages.

The Restatement (Second) of Torts sets out the elements of the tort.

§ 766B. Intentional inference with Prospective Contractual Relation

One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

We note initially the Restatement requires the interference be *both* intentional and improper. There is no question the defendants' interference was intentional. The next question is whether it was improper. The trial court determined the defendants' motive was not sufficiently improper to support a claim. We agree. While disputing the trial court's finding, Omega also argues improper means is an alternative to improper motive.

The Iowa Supreme Court has directly addressed this issue.

In our decisions examining this tort, however, *we have held a purpose on defendant's part to financially injure or destroy the plaintiff is essential.* "To give rise to a viable cause of action ... the actor must have as at least one of his objects the purpose to injure or destroy the plaintiff." Although the Restatement's current position softens this requirement in this developing field of the law, *we are not inclined to depart from our long-established rule. That defendant act with the purpose to financially injure or destroy is still the prevailing requirement in this kind of case.* "No case has been found in which intended but purely incidental interference resulting from the pursuit of the defendant's own ends by proper means has been held to be actionable." This is not a situation involving a specific contractual relationship or expectancy, in which the rule appears to impose liability on one who intentionally and unjustifiably interferes in pursuit of another objective, causing damage. Both rules operate to avoid opening the door to virtually limitless suits of a highly speculative and remote nature.

*Page County Appliance Center v. Honeywell*, 347 N.W.2d 171, 177–78 (Iowa 1984) (citations omitted; emphasis added).

The supreme court has recently reiterated its stance concerning proof of the improper motive or purpose.

In respect to the element of "improper" interference in both Uniform Instructions 1200.1 and 1200.2, Iowa cases have defined the term differently in claims involving interference with a *prospective* business advantage and those involving interference with an *existing* contract. In a claim of interference with a prospective business advantage, the "purpose on the defendant's part to financially injure or destroy the plaintiff is essential." In *Farmers Co-op. [v. The State Bank*, 236 N.W.2d 674, 679 (Iowa 1975)] we stated:

The role of the actor's purpose is considerably different in cases involving

loss of existing contracts than in cases involving loss of prospective advantage. In cases of interference with existing contracts, a purpose to injure or destroy is not essential. The situation is different in cases involving interference with prospective advantage.

*Nesler v. Fisher and Co.*, 452 N.W.2d 191, 199 (Iowa 1990) (citations omitted; emphasis in original).

We determine the supreme court's rulings in *Page County Appliance* and *Nesler* are controlling here. Omega has not demonstrated the existence of any genuine dispute concerning the impropriety of the defendants' purpose. There is no allegation or proof of a "purpose on the defendant's part to financially injure or destroy the plaintiff ..." *Nesler*, 452 N.W.2d at 199. Thus, summary judgment was proper on the interference claim.

We determine the trial court correctly granted partial summary judgment for the defendants on the interference with prospective business relations claim. We affirm the trial court.

Costs of this action are taxed to the appellants.

AFFIRMED.