WATER DEVELOPMENT COMPANY, Appellant,

v.

BOARD OF WATER WORKS Trustees of the City of Des Moines, Iowa, and City of Des Moines, Appellees.

No. 91–554.

Supreme Court of Iowa.

June 17, 1992.

Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

John R. Mackaman and Thomas W. Andrews of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellee Bd. of Water Works Trustees of City of Des Moines.

Bruce E. Bergman, Des Moines, for appellee City of Des Moines.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

When the City of Des Moines annexed part of Polk County southwest of the city in 1988, the residents of the area were being served by the Water Development Company (WDC), a private corporation. Soon after the annexation, the Des Moines Water Works replaced WDC as sole supplier of water for the area. WDC sued the Board of Water Works Trustees and the City of Des Moines (the water works) on theories of inverse condemnation, intentional interference with contracts, and unfair trade practices. The district court granted summary judgment for the water works, and WDC appealed.[1] We affirm.

WDC is a private corporation formed in 1960 to own and operate a water system in Polk County, generally outside the corporate limits of Des Moines. The water works is a utility board of the city organized under Iowa Code chapter 388. The water works manages and controls the water treatment plant and distribution system serving the residents of Des Moines and neighboring areas. At the time of the annexation, WDC served approximately forty-five customers in the annexed area. The water works now serves all of the customers in the annexed area, but presumably WDC continues to serve customers in the remainder of its territory.

After the annexation, the water works constructed its own water system in the annexed area, despite preannexation statements that it would possibly purchase WDC's system. The reasons for refusing to purchase the system were that WDC's concrete-asbestos lines did not meet the city's specifications, WDC lacked authority to operate its lines on public rights-of-way, and WDC asked too much money for its system.

The water works challenges WDC's standing to assert a claim against it under any theory because WDC had not obtained the permits necessary to operate its water system. Iowa Code section 320.4 (1989) provides:

> The state department of transportation in case of primary roads, and the board of supervisors in case of secondary roads, on written application designating the particular highway and part of the highway, the use of which is desired, may grant permission:
>
> ....
>
> 4. To lay water mains in, under, or along highways.

With the exception of a 362–foot section of its waterline, as to which it had a permit, WDC did not have permission from the board of supervisors to construct its water mains on the rights-of-way in the annexed

---

1. On appeal, the City of Des Moines asserts that the water works is a distinct legal entity, which acted without direct city involvement, and that the city cannot be held liable for its acts. We do not address this issue because we conclude that the water works itself is not liable.

area. WDC contends that its lines were nevertheless legalized by Iowa Code section 589.29, enacted in 1982, which provides:

The provisions of section 320.4, relating to the laying of water mains apply to all permits or permissions granted by a county board of supervisors or the state department of transportation and its predecessors before July 1, 1979 and are retroactive to that extent.

Section 589.29 applies only to those "permits or permissions granted" by a board of supervisors prior to 1979; it does not legalize all water systems in place at that time as contended by WDC. Section 589.29 is therefore inapplicable to legalize WDC's installation and maintenance of its water distribution system.

Because of WDC's lack of necessary permits, the water works contends that WDC does not have a compensable interest in its water system. We tend to agree, but the issue is complicated by the fact that, as to the 362–foot section, WDC *did* have the necessary permits. We need not address this issue, however, because we conclude that WDC cannot prevail on the merits of its claims in any event.

I. *Inverse Condemnation.*

WDC alleged that the water works took valuable assets belonging to WDC and that it is entitled to damages under the theory of inverse condemnation.

The phrase "inverse condemnation" appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.

*United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980). *See also Scott v. City of Sioux City*, 432 N.W.2d 144, 145 n. 1 (Iowa 1988).

■ One of the elements of inverse condemnation, of course, is that there be a "taking" of the property. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631, 647 (1978); *Bakken v. City of Council*

*Bluffs*, 470 N.W.2d 34 (Iowa 1991). Such a taking need not amount to a transfer of physical control over the plaintiff's assets, *Penn Cent.*, 438 U.S. at 122 n. 25, 98 S.Ct. at 2658 n. 25, 57 L.Ed.2d at 647 n. 25, but the plaintiff must show the loss of some compensable interest. *See Grove & Burke, Inc. v. City of Fort Dodge*, 469 N.W.2d 703, 705–06 (Iowa 1991) (continued flow of traffic past plaintiff's business, interrupted by city's change of street system, not compensable interest).

■ In this case, none of WDC's pipelines or other fixed assets have been seized or physically impaired, nor have there been any regulations imposed by the water works limiting WDC's use of the system. What has been lost to WDC is its status as the sole supplier of water to the residents of the area. In this respect, this case is analogous to *Alabama Power Co. v. Ickes*, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938). In *Alabama Power*, a utility company challenged government loans to municipalities that were in competition with the plaintiff. The Supreme Court rejected the claim, on standing grounds, because the plaintiff had no compensable right to be protected. The case involved "loan-and-grant agreements" made by the Federal Emergency Administrator of Public Works with the four municipal corporations competing with the plaintiff, a private corporation. The plaintiff attempted to enjoin the execution of these agreements on the ground that they were illegal. The Court noted:

The injury which [the plaintiff] will suffer it is contended, is the loss of its business as the result of the use of the loans and grants by the municipalities in setting up and maintaining rival and competing plants; a result, it is further contended, which will be directly caused by the unlawful act of the administrator in making and consummating the loan-and-grant agreements.

*Alabama Power*, 302 U.S. at 475, 58 S.Ct. at 302, 82 L.Ed. at 376.

The Court noted that each of the municipalities, which were beneficiaries of the loan and grant agreements,

has authority to construct and operate its proposed plant and distribution system in competition with [the plaintiff] ... [and] that neither the United States nor any of the respondents has reserved any right or power to require an elimination of competition or designate any agency from which the municipality must purchase its power. Each municipality is left entirely free from Federal control or direction in respect of the management and control of its plant and business. In short, the case for [the plaintiff] comes down to the contention that consummation of the loan-and-grant agreements should be enjoined on the sole and detached ground that the administrator lacks constitutional and statutory authority to make them, and that the resulting moneys, which the municipalities have clear authority to take, will be used by the municipalities in lawful, albeit destructive, competition with [the plaintiff].

*Id.* at 478, 58 S.Ct. at 303, 82 L.Ed. at 377. The Court continued:

The claim that [the plaintiff] will be injured, perhaps ruined, by the competition of the municipalities brought about by the use of the moneys, therefore, presents a clear case of damnum absque injuria. Stated in other words, these municipalities have the right under the state law to engage in the business in competition with [the plaintiff], since it has been given no exclusive franchise. If its business be curtailed or destroyed by the operations of the municipalities, it will be by lawful competition from which no legal wrong results.

What [the plaintiff] anticipates, we emphasize, is damage to something it does not possess—namely, a right to be immune from lawful municipal competition.

*Id.* at 479–80, 58 S.Ct. at 304, 82 L.Ed. at 378.

*Grove & Burke, Inc.* is also analogous. In that case, a business owner sought damages against the city for loss to its business through the rerouting of traffic on the city's streets. We held that a landowner has no vested right to maintain a certain level of traffic flow, and the construction of roads and bridges interfering with that flow cannot be the subject of a taking claim. 469 N.W.2d at 705–06.

Here, WDC had no exclusive right to furnish water to the annexed area, nor did it have a right to be free from competition. Any "taking" of its business through lawful competition was not compensable as an inverse condemnation.

## II. *Intentional Interference With a Contract.*

■ The Restatement rule is that

**[o]ne who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.**

Restatement (Second) of Torts § 766A (1979). *See Toney v. Casey's Gen. Stores, Inc.,* 460 N.W.2d 849, 852 (Iowa 1990); *Nesler v. Fisher & Co.,* 452 N.W.2d 191, 194 (Iowa 1990).

The plaintiff must show that (1) the plaintiff had valid contracts, (2) the defendant knew of the contracts, (3) the defendant intentionally and improperly interfered with the contracts, (4) the interference caused the contracting parties not to perform the contract with the plaintiff, and (5) the amount of the plaintiff's damages. *Nesler,* 452 N.W.2d at 198.

■ The key words, of course, are "intentionally" and "improperly." In this case, there is no question that the water works intentionally encouraged WDC's customers to hook up to the new city line. In determining whether a defendant's action is "improper," the court may consider (1) the nature of the defendant's conduct, (2) their motive, (3) the interest sought to be protected by the plaintiff, (4) the interest sought to be advanced by the defendant, (5) any social interest in protecting the freedom of action of the defendant versus the contractual interests of the plaintiff, (6) the proximity of the defendant's conduct to the interference, and (7) the relations between

the parties. *Toney,* 460 N.W.2d at 853; Restatement § 767.

Almost all of WDC's customers were month-to-month water purchasers and could have terminated their contracts with WDC at any time. These contracts are therefore analogous to employments at will, to which our law of contract interference has applied different rules. In those cases, the proof is more demanding than when the claimed interference is with an existing contract. *See Toney,* 460 N.W.2d at 853–54. As one authority states,

> a contract at will is usually not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means is used, as where one employer hires away employees of another whose contract rights are terminable at will. The principle would logically apply to any agreement that could not be enforced as a contract, since such an agreement can be avoided at will, as where a contract lacks mutuality. In all such cases the plaintiff's interest may be protected, but as a prospective advantage rather than as a contract, with the correspondingly greater freedom of action on the defendant's part.

W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, at 996 (5th ed. 1984) (footnotes omitted) [hereinafter Prosser].

In the case of an alleged interference with a prospective contract,

> there must be substantial evidence of a predominant motive on the part of [the defendant] to terminate the [contract] for improper reasons.

*Toney,* 460 N.W.2d at 853. *See Preferred Mktg. Assocs. Co. v. Hawkeye Nat'l Life Ins. Co.,* 452 N.W.2d 389, 396 (Iowa 1990) (claim of interference with prospective business advantage requires showing that purpose was to damage plaintiff's business).

■ While termination of the water contracts was the result of the water works' installation of its new system, we do not believe that an improper motive was the primary consideration, and there was no substantial evidence that the predominant purpose of the installation of the system was to terminate WDC's water contracts. *See Toney,* 460 N.W.2d at 853.

### III. *Unfair Competition.*

■ WDC's petition alleged that water works' actions "constitute a combination or conspiracy to restrain or monopolize the trade or commerce in the southwest Polk annexation market, in violation of the Iowa Competition Law." Presumably, the Iowa Competition Law referred to is that found in Iowa Code chapter 553. Iowa Code section 553.4 provides:

> A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market.

Section 553.5 provides:

> A person shall not attempt to establish or establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition or of controlling, fixing, or maintaining prices.

In *Neyens v. Roth,* 326 N.W.2d 294, 297 (Iowa 1982), we held that the City of Dubuque was subject to the provisions of chapter 553 in the operation of its ambulance business, unless it fell under the statutory exemption for "activities or arrangements expressly approved or regulated by any regulatory body or officer acting under authority of this state or of the United States." *Id.* at 298; Iowa Code § 553.6(4). We held that the exemption did not apply. *Neyens,* 326 N.W.2d at 299.

After *Neyens,* chapter 553 was amended to provide that the Iowa Competition Law does not apply to "[t]he activities of a city or county, or an administrative or legal entity created by a city or county, when acting within its statutory or constitutional home rule powers and to the same extent that the activities would not be prohibited if undertaken by the state." Iowa Code § 553.6(5).

The water works is a "legal entity created by a city or county" under the amendment to section 553.6, and we find nothing to suggest that operating a water system would be prohibited if undertaken by the

state. Accordingly, sections 553.3 and 553.5 are inapplicable.

We agree with the trial court that no substantial issues of material fact were shown and hold that summary judgment was properly entered for the defendants.

AFFIRMED.