**RTL DISTRIBUTING, INC., Appellee,**

v.

**DOUBLE S BATTERIES, INC., d/b/a Batteries Included, Appellant.**

No. 94–1225.

Court of Appeals of Iowa.

Feb. 2, 1996.

Robert F. Wilson, Cedar Rapids, for appellant.

Mark T. Hamer and Charles A. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellee.

Heard by HABHAB, P.J., and CADY, and HUITINK, JJ.

CADY, Judge.

Double S Batteries, Inc., appeals a district court judgment entered in favor of RTL Distributing, Inc., based on intentional interference with a contract. The question presented on appeal is whether substantial evidence supports the judgment. We are unable to find substantial evidence in the record and reverse.

In 1990 Van Schroeder and Marie Schulte incorporated Double S for the purpose of operating a small battery wholesale business. The business started after Shroeder and Schulte purchased the right to service approximately sixty percent of the retail battery accounts of Gary Doerrfeld, who also operated a small battery wholesale business in the Cedar Rapids area. Schroeder and Schulte had previously worked for Doerrfeld and were knowledgeable in the business. The purchase agreement between Doerrfeld and Schroeder and Schulte contained a non-compete clause. The parties also agreed to notify each other if they no longer desired to service an account in order for the other party to have a first opportunity to service the account.

In 1990 Gary Doerrfeld incorporated RTL following the sale of the accounts to Schroeder and Schulte. Benjamin Chair infused the capitol for the business and became the sole shareholder. The corporation was formed for the purpose of operating a small battery wholesale business. The wholesale battery business remained very competitive, and RTL and Double S became competitors. Doerrfeld's best and most profitable accounts were Drug Town Stores in Iowa City, Cedar Rapids and the surrounding areas. Doerrfeld did not sell these accounts to Double S, and continued to sell batteries to the area Drug Town Stores as part of his employment arrangement with RTL.

In May 1991 Double S began to service the area Drug Town accounts without first contacting Doerrfeld. This occurred after Doerrfeld failed to service the accounts. Doerrfeld continued to sell batteries to his remaining accounts under his contract with RTL until September 3, 1991, when he went to work selling batteries for Double S. He began negotiating with Double S for an employment contract in August 1991. Additionally, Doerrfeld made a few sales on Double S invoices while still employed by RTL.

RTL filed this lawsuit against Double S for interference with a contractual arrangement, interference with a prospective business advantage and conspiracy among their claims. Double S brought a counterclaim. Following a bench trial, the district court denied recovery of all claims except interference with a contractual relationship. The court concluded Double S interfered with the employment relationship between RTL and Doerrfeld, and awarded RTL damages of $33,835.

The appeal initiated by Double S presents the single issue of whether substantial evidence supports the decision of the trial court that Double S intentionally and improperly interfered with the contract between RTL and Doerrfeld. No appeal was sought from the remaining claims presented at trial.

## I. Standard of Review

■ Our review is at law. The findings of fact by trial court are binding when supported by substantial evidence in the record. *Cross v. Lightolier Inc.*, 395 N.W.2d 844, 846–47 (Iowa 1986).

## II. Intentional Interference With a Contract

■ Generally, a person who intentionally and improperly interferes with the performance of a contract between another and a third person commits a tort. *See Nesler v. Fisher and Co., Inc.,* 452 N.W.2d 191, 194–95 (Iowa 1990). The underlying elements of the rule differ slightly depending upon which party to the contract is the target of the interference by the defendant. *Id.;* Restatement (Second) of Torts § 766A cmt. a (1979). If the defendant induces or otherwise causes the third person not to perform the contract, the defendant is liable to the other person (plaintiff) for damages from the failure of the third person to perform the contract. *Id.;* Restatement (Second) of Torts § 766 (1979). On the other hand, if the defendant prevents the other person (plaintiff) from performing a contract with a third person or causing his or her performance to be more expensive or burdensome, the defendant is liable to the other person (plaintiff) for the resulting damages. *Id.;* Restatement (Second) of Torts, § 766A (1979).

■ In this case, RTL based its claim against Double S on interference by Double S with Doerrfeld's performance of his contract with RTL. Thus, the claim falls within section 766 of the Restatement (Second) of Torts, and embraces the following elements:

(1) The existence of a valid contractual relationship,

(2) Knowledge of the relationship,

(3) Intentional and improper interference inducing or causing a breach or termination of the relationship, and

(4) Resultant damage to the party whose relationship has been disrupted.

*Robert's River Rides, Inc. v. Steamboat Dev. Corp.,* 520 N.W.2d 294, 303 (Iowa 1994).

Double S argues Doerrfeld was an employee-at-will and the interference found by the trial court was not improper as a matter of law. Thus, the fighting question is whether there was substantial evidence to support the third element of the tort.

■ We begin our analysis by observing the underlying contract was terminable at-will. RTL does not seriously challenge this conclusion. The existence of an at-will contract of employment, however, does not insulate a defendant from liability for tortious interferences. *See Toney v. Casey's General Stores, Inc.,* 460 N.W.2d 849, 853; Restatement (Second) of Torts § 766 cmt. g (1979). *See also Europlast, Ltd. v. Oak Switch Systems, Inc.,* 10 F.3d 1266, 1274 (7th Cir.1993). Until a contract is terminated, it remains valid and subsisting, and third persons may not improperly interfere with it. Restatement (Second) of Torts § 766 cmt. g. (1979). Nevertheless, the standard of proof is more demanding when the employment contract is at-will, and our law of contract interference applies different rules. *Water Dev. Co. v. Bd. of Water Works,* 488 N.W.2d 158, 162 (Iowa 1992). A higher standard is required because interference with at-will employment contracts only gives rise to the interference with a future expectancy, not a legal right. Restatement (Second) of Torts § 766 cmt. g (1979). The situation, therefore, is more analogous to the interference with a prospective contractual relation, with the corresponding greater freedom of action on the part of the defendant. *Water Dev. Co.,* 488 N.W.2d at 162; *Toney,* 460 N.W.2d at 853–54, (quoting Prosser and Keeton on the law of Torts § 129, at 996 (5th ed. 1984)).

■ The torts of interference with an existing contract and interference with a prospective contractual relation both require the interference to be "improper." *Nesler v. Fisher & Co., Inc.,* 452 N.W.2d 191, 199 (Iowa 1990). The term "improper", however, is defined differently for each tort. *Id.* In cases involving interference with a prospective contract, the defendant's purpose must be to financially injure or damage plaintiff's business. *Id.* There must be substantial evidence of a predominant motive by the defendant to terminate the contract for improper reasons. *Water Dev. Co.,* 488 N.W.2d at 162; *Toney,* 460 N.W.2d at 853. This same requirement is applied to at-will employment contracts. *Id.*

■ There are many factors to consider in determining whether interference is improper. Restatement (Second) of Torts § 767 (1979). In the context of at-will em-

ployment contracts, however, the law recognizes a competitor's privilege in distinguishing between proper or improper interference. Restatement (Second) of Torts § 768 (1979). The interference is not improper if:

a) the relation concerns a matter involved in the competition between the actor and the other, and

b) the actor does not employ wrongful means, and

c) his action does not create or continue an unlawful restraint of trade, and

d) his purpose is at least in part to advance his interest in competing with the other.

*Id. See Toney*, 460 N.W.2d at 853.

■ No precise or exhaustive definition of "wrongful means" exists to evaluate the interference between business competitors. It is usually viewed as such conduct which can establish liability for the defendant. *Conoco Inc. v. Inman Oil Co., Inc.*, 774 F.2d 895, 907 (8th Cir.1985). Common examples include bribery, fraud, misrepresentation, deceit and misuse of confidential information. *Duggin v. Adams*, 234 Va. 221, 225, 360 S.E.2d 832, 836 (1987); *Contractors' Building Supply, Inc. v. Gwinnett Sash & Door Inc.*, 199 Ga.App. 38, 40, 403 S.E.2d 844, 846 (1991). Conduct such as inducing an employee to undermine the employer's best interest may also be considered "wrongful means." *See Europlast*, 10 F.3d at 1274–75. Moreover, it can even be premised on a violation of recognized ethical rules or established customs or practices in the business community. Restatement (Second) of Torts § 767 cmt. c (1979); *Hunter v. Bd. of Trustees*, 481 N.W.2d 510, 518 (Iowa 1992). The line between acceptable competition and tortious interference can be very fine. In determining if the conduct or means becomes actionable as intentional and improper interference, however, it is important to consider the acts not as a determinative rule but as they reveal an underlying motivation. *See Nesler*, 452 N.W.2d at 197–99. The motive or purpose of the defendant must be improper. *Id.*

■ In this case, the trial court based its finding of an improper interference essential-ly on evidence that Double S violated its own non-compete agreement and failed to follow the recognized procedure in notifying the salesperson before contacting a competitor's account. While the district court decision was thorough and well-written, we are unable to conclude this important finding was supported by substantial evidence.

The evidence showing Double S violated accepted business practices, as well as its own agreement, may support a finding it used wrongful means to interfere. However, no evidence presented at trial indicated those wrongful means further revealed a predominant motive by Double S to terminate the contract for improper reasons. This is the critical inquiry.

It is important to observe the district court found RTL failed to prove its additional claim of interference with a prospective business advantage. This is important because in doing so the district court specifically found Double S did not act "with a purpose to financially injure" RTL, and did not "wrongfully interfere with RTL's prospective business advantage." The district court further found no conspiracy by Double S to deprive RTL of its rights with its customers. Since we view interference claims involving at-will employment contracts similar to claims involving the interference with a prospective business relation, we believe in this case it would be inconsistent to find the same conduct did not constitute interference with a prospective contract but did constitute inference with an at-will employment contract. We believe the findings by the district court on the claim for interference with a prospective relation dovetail our conclusion that the record does not contain substantial evidence showing Double S was motivated to terminate the contract for improper reasons.

In conclusion, we reverse the judgment of the district court. We remand to enter judgment for Double S. Costs to RTL.

**REVERSED AND REMANDED.**