Donald **CRIPPEN**, Joan Crippen, and Barbara Maitland, d/b/a HMR Home and Business Recyclers, Appellants,

v.

**CITY OF CEDAR RAPIDS**, City Of Marion, and Bluestem Solid Waste Agency, Appellees.

No. 98–1801.

Supreme Court of Iowa.

Oct. 11, 2000.

John C. Wagner and Christopher L. Jorgensen of John C. Wagner Law Offices, P.C., Marengo, for appellants.

James H. Flitz, Cedar Rapids, for appellee City of Cedar Rapids.

John M. Bickel and Kevin J. Caster of Shuttleworth & Ingersoll, P.C., Cedar Rapids, and Donald Hoskins, Marion City Attorney, for appellee City of Marion.

Gary Jarvis, Assistant County Attorney, for appellee Bluestem Solid Waste Agency.

TERNUS, Justice.

The appellants/plaintiffs, Donald Crippen, Joan Crippen, and Barbara Maitland, operate a private recycling business under the name of HMR Home and Business Recyclers. (We will refer to the appellants collectively as "HMR.") The appellees/defendants, the City of Cedar Rapids and the City of Marion, implemented residential curbside recycling as a city service through their respective solid waste management departments. Appellee/defendant, Bluestem Solid Waste Agency, is a joint agency of the City of Cedar Rapids and Linn County; it participated in the promotion of the cities' recycling services.

HMR brought this action for damages and injunctive relief against the defendants, claiming that the defendants were illegally interfering with HMR's residential curbside recycling business. Because we agree with the district court's determination that the defendants' conduct was

proper as a matter of law, we affirm the summary judgment entered against HMR.

## I. Background Facts and Proceedings.

In 1989, HMR began a private recycling business that provided both commercial and residential curbside recycling services in the cities of Cedar Rapids and Marion. The residential service involved the collection of recyclable materials from residences and the sale of these materials to various buyers. Initially, HMR was the only provider of this service in the area. It made no charge for collection of recyclables until 1991 when it began charging for this service.

That same year, the City of Cedar Rapids began a recycling program. This program consisted of roving trucks that picked up recyclable materials, and permanent drop-off sites where residents could deposit such items. Later, both Cedar Rapids and Marion passed ordinances implementing curbside recycling for single-family dwellings and smaller, multiple-family dwellings. These recycling services were funded by assessments made to each qualifying dwelling, regardless of whether the residents used the cities' recycling services.

HMR filed this suit in 1997, alleging that the defendants' curbside recycling programs had caused HMR to lose business. Both damages and injunctive relief were sought under several theories: (1) the defendants' recycling services competed with private enterprise in violation of Iowa Code section 23A.2 (1997); (2) the defendants engaged in a combination or conspiracy to restrain or monopolize the recycling market, in violation of Iowa Code chapter 553; (3) the cities' collection of a fee for its recycling services was illegal; (4) the cities' comprehensive solid waste plans failed to utilize private enterprise as required by

Iowa Code sections 455B.301A and 455B.302; and (5) the defendants' actions constituted a taking of HMR's property.[1]

The defendants filed motions for summary judgment, which were granted by the district court. This appeal followed.

## II. Scope of Review.

 The scope and standard of review of summary judgment rulings are well established. This court reviews such rulings for correction of errors of law. See Sanford v. Manternach, 601 N.W.2d 360, 363 (Iowa 1999). If the record shows no genuine dispute of a material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. See Iowa R. Civ. P. 237(c). In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party. See Bearshield v. John Morrell & Co., 570 N.W.2d 915, 917 (Iowa 1997). We also indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question. See Fogel v. Trustees of Iowa College, 446 N.W.2d 451, 454 (Iowa 1989).

## III. Chapter 23A—Competition of Governmental Subdivisions with Private Enterprise.

 Chapter 23A prohibits state agencies or political subdivisions from competing with private enterprises under specified circumstances:

1. A state agency or political subdivision shall not, unless specifically authorized by statute, rule, ordinance or regulation:

a. Engage in the manufacturing, processing, sale, offering for sale, rental, leasing, delivery, dispensing, distributing, or advertising of goods or services to the public which are also offered by

---

1. HMR also sought a declaratory judgment that the Cedar Rapids ordinance did not prohibit HMR from collecting curbside recycling materials from HMR's Cedar Rapids customers. The City concedes that its ordinance does not require HMR's customers to use the City's recycling service in lieu of HMR's service. Therefore, we need not address this issue.

private enterprise unless such goods or services are for use or consumption exclusively by the state agency or political subdivision.

Iowa Code § 23A.2(1)(*a*). There are, however, exceptions to this prohibition, including one for "[t]he operation of a city enterprise, as defined in section 384.24, subsection 2." *Id.* § 23A.2(10). The district court concluded that the defendants' recycling programs constituted a "city enterprise" and, therefore, were exempt from chapter 23A. We agree.

■ Section 384.24 states in relevant part:

> 2. *"City enterprise"* means any of the following, including the real estate fixtures, equipment, accessories, appurtenances, and all property necessary or useful for the operation of any of the following:
>
> . . .
>
> f. Solid waste collection systems and disposal systems.

*Id.* § 384.24(2). Based on this definition, it is clear that the legislature intended that a city could operate a solid waste collection and disposal system in competition with private enterprise.

HMR argues, nonetheless, that the exemption does not apply here for two reasons. First, HMR argues that only the "real estate, fixtures, equipment, accessories, appurtenances, and all property necessary or useful for the operation of" the solid waste collection system, *id.* § 384.24(2), fall within the definition of "city enterprise," but not the collection service itself. Second, HMR contends that recyclable materials are not "solid waste" such that collection of these materials is appropriately considered part of a solid waste collection and disposal system.

■ A. *Scope of exemption.* As noted, HMR asserts that only the tangible assets of a solid waste collection system are exempted. This interpretation of section 384.24(2) ignores the fact that it is the solid waste collection *system* that is the subject of the exemption. *See id.* (" 'City enterprise' means any of the following . . .: . . . [s]olid waste collection *systems.*" (Emphasis added.)). The tangible items listed in the statute are specifically made a part of the exempted system; they are not a limitation on what is encompassed within the exemption. *See id.* (" 'City enterprise' means any of the following, *including* real estate, fixtures. . . ." (Emphasis added.)). Clearly, the service itself—solid waste collection and disposal—is part of the exempted system.

■ B. *Recyclable materials as "solid waste."* HMR argues that recyclable materials are not "solid waste" such that the collection of recyclables could be considered a *"solid waste* collection system." "Solid waste" is defined in the Iowa Code as "garbage, refuse, rubbish, and other similar *discarded* solid or semisolid materials. . . ." *Id.* § 455B.301(20) (emphasis added). To "discard" means to "get rid of as no longer useful, valuable, or pleasurable." Webster's Third New International Dictionary 644 (unabr. ed.1993). "Refuse" is "the worthless or useless part of something." *Id.* at 1910. Similarly, "rubbish" is defined as "miscellaneous useless valueless waste or rejected matter." *Id.* at 1983.

Based on the common meaning of the statutory terms, we think that recyclable materials fall within the definition of "solid waste." Residents who put recyclable materials—tin cans, glass, paper, plastic and cardboard—at the curb surely regard these materials as "discarded": the residents are getting rid of something that is of no use to them. Moreover, the discarded recyclables are similar in nature to the other materials residents place in a trash can at curbside for pickup by the city; all such materials, recyclables and other waste, are useless to the residents throwing them away. We hold, therefore, that recyclables left at curbside for collection fall within the definition of "solid waste."

This holding is bolstered by other provisions in the Iowa Code that make it clear the legislature intended that a system of solid waste collection and disposal would include recyclables. Section 455B.301A declares that "[t]he protection of the health, safety, and welfare of Iowans and the protection of the environment require the safe and sanitary disposal of *solid wastes.*" Iowa Code § 455B.301A(1) (emphasis added). To promote this goal, the statute establishes a *"solid waste* management policy" that includes, "in descending order of preference":

a. Volume reduction at the source.

b. *Recycling* and reuse.

*Id.* (emphasis added). In addition, section 455B.302 requires each city in the state to have a "comprehensive solid waste reduction program consistent with the waste management hierarchy under section 455B.301A." *Id.* § 455B.302. It is apparent from the legislature's inclusion of recycling in the statute's waste management hierarchy that the general assembly not only envisioned, but also required, that recycling be part of a city's solid waste system. *See also id.* § 455D.21 (suggesting that city councils consider the adoption of an ordinance for the "mandatory curbside collection of recyclable materials"). To interpret chapter 23A as prohibiting a municipal recycling program that competes with private enterprise would conflict with the legislature's clear mandate that cities have a recycling program. *See generally William C. Mitchell, Ltd. v. Brown,* 576 N.W.2d 342, 349 (Iowa 1998) ("We must not forget in our interpretation of statutes that our primary goal is to give statutes a reasonable construction which will effectuate rather than defeat the purpose of the statute[s].").

Because recycling is a legitimate component of the defendants' solid waste collection and disposal systems, their residential curbside recycling programs fall within the definition of "city enterprise." *See* Iowa Code § 384.24(2)(*f*) (defining "city enterprise" to include "[s]olid waste collection systems and disposal systems"). Accordingly, chapter 23A's prohibition against government competition with private businesses does not apply. *See id.* § 23A.2(10) (exempting the operation of a "city enterprise" from the prohibitions of chapter 23A). We therefore agree with the district court's ruling that the defendants have not violated chapter 23A as a matter of law.

## IV. *Chapter 553—Iowa's Competition Law.*

HMR claims that the defendants engaged in a combination or conspiracy to restrain or monopolize the recycling activities in HMR's market in violation of chapter 553. That chapter states that "[a] person shall not attempt to establish[,] or establish, maintain, or use a monopoly of trade or commerce in a relevant market for the purpose of excluding competition . . . ." *Id.* § 553.5. There are, however, exceptions to this prohibition. Section 553.6 states:

This chapter shall not be construed to prohibit:

. . .

4. The activities or arrangements expressly approved or regulated by any regulatory body or officer acting under authority of this state or of the United States.

5. The activities of a city . . . when acting within its statutory or constitutional home rule powers and to the same extent that the activities would not be prohibited if undertaken by the state.

*Id.* § 553.6(4)-(5).

HMR claims there is no evidence in the record that certain allegedly anticompetitive activities of the defendants had been expressly approved or regulated as required by subsection (4). It claims this deficiency is fatal to *any* exemption under section 553.6, including the exemption contained in subsection (5). We do not agree that subsection (4)'s requirement of express approval or regulation applies to

subsection (5). It is clear that each subsection describes an independent exemption from the constraints of chapter 553. Subsection (5) does not require express approval or regulation of the challenged activities and, therefore, we reject HMR's contention that the purported lack of such approval or regulation renders the subsection (5) exemption inapplicable.

Turning to an examination of the applicability of subsection (5), we agree with the district court that this provision exempts the defendants' activities from the scope of chapter 553. Subsection (5) applies to the activities of a city when the city is acting "within its statutory or home rule constitutional powers," but only "to the same extent that the activities would not be prohibited if undertaken by the state." *Id.* § 553.6(5).

■ The Iowa Constitution provides:

Municipal corporations are granted home rule power and authority, not inconsistent with the laws of the general assembly, to determine their local affairs and government, except that they shall not have power to levy any tax unless expressly authorized by the general assembly.

Iowa Const. art. III, § 38A. Iowa Code section 364.1 similarly provides:

A city may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the city or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents.

Iowa Code § 364.1. In interpreting cities' home rule power, this court has noted that "cities now have the authority to act unless a particular power has been denied them by statute." *City of Des Moines v. Master Builders of Iowa,* 498 N.W.2d 702, 703–04 (Iowa 1993).

■ We have already determined that the defendants' operation of recycling programs is a legitimate "city enterprise." These programs clearly advance the "health, welfare, comfort, and convenience of [the cities'] residents." Iowa Code § 364.1. Accordingly, the recycling programs fall within the cities' home rule powers, absent a legislative enactment denying cities this authority. HMR has not directed us to any statutory provision that would deny the defendants the power to operate a recycling program. To the contrary, as discussed above, cities are mandated to incorporate recycling into their solid waste management plans. We hold, therefore, that the defendants' operation of recycling programs is within their home rule power.

We next consider whether such programs would be prohibited if undertaken by the State. Again, HMR has not identified any statute or principle of law that would prohibit the State from undertaking a recycling program. We hold, therefore, that the cities' recycling services fall within the exemption contained in section 553.6(5), rendering the prohibitions contained in chapter 553 inapplicable. *See Water Dev. Co. v. Board of Water Works,* 488 N.W.2d 158, 162–63 (Iowa 1992) (holding that section 553.6(5) exempted the city's water works from the application of chapter 553).

### V. *Legality of Assessment for Recycling Programs.*

Both the Cedar Rapids and Marion recycling programs are funded through an assessment charged to each residential unit, regardless of whether the particular residential unit uses the city's curbside collection service. In Marion, this assessment is part of the monthly fee for solid waste disposal. In Cedar Rapids, a separately designated recycling fee is included in residents' monthly bills for solid waste disposal. These fees are established by ordinance in each city. HMR asserts that the cities' fees violate residents' due pro-

cess rights and that the fees constitute an unauthorized tax.

■ A. *Due process.* HMR claims that the recycling fee is arbitrary and capricious because all residents must pay the fee regardless of whether they use the service. It contends the imposition of an unreasonable fee violates the individual plaintiffs' due process rights. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 9.

■ Due process requires that there be a rational nexus between a city ordinance—here the ordinances establishing the recycling fees—and the governmental purpose the ordinance is intended to advance. *See State v. Klawonn,* 609 N.W.2d 515, 519–20 (Iowa 2000). Chapter 455B, which requires cities to use recycling as part of their comprehensive solid waste reduction programs, contains an enlightening statement of the purpose underlying such programs. *See* Iowa Code §§ 455B.301A (stating that recycling is part of the solid waste management policy of the state), .302 (requiring cities to implement solid waste reduction programs consistent with the state's solid waste management hierarchy, which includes recycling). Chapter 455B contains the following declaration of policy:

> The protection of the health, safety, and welfare of Iowans and the protection of the environment require the safe and sanitary disposal of solid wastes. An effective and efficient solid waste disposal program protects the environment and the public, and provides the most practical and beneficial use of the material and energy values of solid waste. While recognizing the continuing necessity for the existence of landfills, alternative methods of managing solid waste and a reduction in the reliance upon land disposal of solid waste are encouraged. In the promotion of these goals, the following waste management hierarchy in descending order of preference, is established as the solid waste management policy of the state:

> *a.* Volume reduction at the source.

> *b.* Recycling and reuse.

*Id.* § 455B.301A(1).

We conclude from this statement of policy that recycling programs are intended to protect the environment and the public by reducing the need for land disposal of solid waste. Because all citizens benefit from a reduction in the amount of solid waste being deposited in landfills, it is not unreasonable, arbitrary, or capricious for a city operating a recycling program to assess a fee to all residents for this program.

The West Virginia Supreme Court of Appeals under similar circumstances reached the same conclusion. *See City of Princeton v. Stamper,* 195 W.Va. 685, 466 S.E.2d 536 (1995). In *Stamper,* city residents objected to paying refuse disposal charges when they did not actually use the refuse collection service provided by the city. *Id.* at 537. The West Virginia court held that the ordinance imposing the fee was reasonable, stating the following rationale:

> The appellants fail to recognize that the municipal charge is not just for collecting and disposing of refuse from their places of residence. The sum of all charges are marshalled and designed to defray the expense of a systemic refuse disposal scheme within the City of Princeton. In other words, the purpose of the Ordinance is to protect the health, safety and welfare of the entire community.

> . . .

> The appellants attempt to emphasize that a service fee cannot be imposed against a non-user. The fallacy in this reasoning is that the appellants are users of the municipal service, in a real sense, regardless of how they choose to dispose of refuse because they receive the benefit from the general disposal system. All residents, regardless of how they personally choose to dispose of their refuse, receive a benefit in the

collection and disposal of refuse from other premises in the community.

*Id.* at 539. The same rationale supports our rejection of HMR's due process claim here.

 **B.** *Unauthorized tax.* HMR also claims that the recycling charges are illegal because they constitute an unauthorized tax in violation of the Iowa Constitution and the Iowa Code. As previously noted, the Iowa Constitution grants home rule power to municipalities "except that they shall not have power to levy any tax unless expressly authorized by the general assembly." Iowa Const. art. III, § 38A; *accord* Iowa Code § 364.3(4) ("A city may not levy a tax unless specifically authorized by a state law."). In support of its assertion that the recycling charges are a "tax," HMR relies on this court's statement in *Newman v. City of Indianola*, 232 N.W.2d 568 (Iowa 1975), that "[a] tax is a charge to pay the cost of government without regard to special benefits conferred." 232 N.W.2d at 573.

Accepting HMR's characterization of the recycling charges as a tax, we think the determinative issue is whether these charges are authorized by the legislature. We conclude they are.

Iowa Code section 384.84 provides:

 The governing body of a ... city enterprise ... may establish, impose, adjust, and provide for the collection of rates and charges to produce gross revenues at least sufficient to pay the expenses of operation and maintenance of the ... city enterprise.

Iowa Code § 384.84(1). As we have already determined, the cities' solid waste management systems, which include curbside recycling services, are city enterprises. Therefore, the cities, through the action of their respective city councils, may establish rates or charges that would at least cover the costs of the programs. Witnesses for the cities testified that all of the funds generated by the recycling fees were utilized to support the cities' waste management programs. HMR has presented no evidence to the contrary.

Based on the undisputed facts, we conclude that the charges challenged by HMR are authorized by section 384.84(1). Therefore, these charges do not violate the constitutional and statutory prohibitions against the levy of a tax by a city. The district court correctly rejected HMR's claim that the assessments made for the recycling programs were illegal.

**VI.** *Compliance with Iowa Code Section 455B.301A(2).*

 HMR contends that the defendants have violated Iowa Code section 455B.301A(2) because they have failed to utilize private enterprise in their recycling programs. The statute upon which HMR relies states:

 2. In the implementation of the solid waste management policy, the *state* shall:

 . . .

 *b.* Utilize the capabilities of private enterprise as well as the services of public agents to accomplish the desired objectives of an effective solid waste management program.

*Id.* § 455B.301A(2) (emphasis added).

The district court held that this directive did not apply to the defendants because, by the statute's own terms, it encompassed only "the state." HMR asserts this ruling was in error because under section 455B.302, cities are ordered to "provide for the establishment and operation of a comprehensive solid waste reduction program *consistent with the waste management hierarchy under section 455B.301A.*" *Id.* § 455B.302 (emphasis added).

The flaw in HMR's argument is that the requirement under section 455B.301A(2)—that private enterprise be utilized—is not part of "the waste management hierarchy" imposed on cities and outlined in section 455B.301A(1). *See id.* § 455B.301A(1) (establishing a hierarchy that includes "[v]olume reduction at the source" and

"[r]ecycling and reuse"). Accordingly, the requirement that cities follow the waste management hierarchy cannot be interpreted to impose upon cities the additional requirement that they use private enterprise.

If the legislature had intended to obligate cities to engage private enterprise, the legislature would have said so. Instead, the legislature stated in section 455B.302 that "[c]ities ... *may* execute with public and private agencies contracts, leases, or other necessary instruments...." (Emphasis added.) To apply to cities section 455B.301A(2), which states that "the *state shall* ... [u]tilize the capabilities of private enterprise," would be directly contrary to the legislature's expressed intent in section 455B.302 making the use of private agencies optional for cities.

For the foregoing reasons, we hold that section 455B.301A(2) does not apply to cities or their agencies. Accordingly, we must reject, as did the district court, HMR's contention that the defendants have violated this statutory provision. Accordingly, summary judgment was properly entered on this claim.

## VII. *Takings Claim.*

The Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *accord.* Iowa Const. art. I, § 18 ("Private property shall not be taken for public use without just compensation first being made...."). In this case, HMR asserts that the defendants' ordinances instituting curbside recycling unfairly deprived it of customer contracts, thereby resulting in the loss of business, a private property interest.

▮▮▮▮ The underlying framework for analyzing such a claim has been set out by this court as follows:

(1) Is there a constitutionally protected private property interest at stake? (2) Has this private property interest been "taken" by the government for public use? and (3) If the protected property interest has been taken, has just compensation been paid to the owner?

*Bormann v. Board of Supervisors*, 584 N.W.2d 309, 315 (Iowa 1998). We agree with the district court's conclusion that HMR's loss of business is not a protected private property interest so as to entitle it to just compensation.[2]

We note initially that there is no allegation that the cities took possession of any tangible property of HMR. Nor does HMR claim there has been a physical invasion of its property, or that HMR's tangible assets have been made totally worthless. Neither city has prohibited HMR from entering into contracts with city residents nor has either city required residents to break their contracts with HMR. (There is nothing in the record to show that these contracts were anything other than termina-

2. HMR argues that there is a genuine dispute as to whether "HMR's loss is a mere reduction of value or a significant reduction of value," and that summary judgment is inappropriate in view of this factual uncertainty. Admittedly, the *extent* of harm caused to HMR is relevant to whether a private property interest has been "taken," the second step in a takings analysis. *See Bormann*, 584 N.W.2d at 316 (stating that one factor court must consider in determining whether a taking has occurred is "the economic impact of the regulation on the claimant's property"). This fact is not relevant, however, to whether this *type* of loss is protected by the Fifth Amendment. *See id.* (stating that first step in takings analysis is whether "a constitutionally protected private property interest [is] at stake"). Because we conclude that the record establishes as a matter of law that HMR does not have a constitutionally protected private property interest at stake, we do not reach the second step of the analysis—whether a taking has occurred. Therefore, the factual dispute identified by HMR does not prevent entry of summary judgment in this case. *See Farm & City Ins. Co. v. Anderson*, 509 N.W.2d 487, 491 (Iowa 1993) (holding that dispute with respect to fact that does not affect the outcome of the lawsuit does not preclude summary judgment).

ble at will by either party.) HMR is still free to use its property to provide residential curbside recycling services. The property that HMR asserts has been taken is, therefore, simply its economic loss resulting from the defendants' legal competition.

This court considered a nearly identical claim in *Water Development Co. v. Board of Water Works.* In that case, the plaintiff, a private water company, sued a municipal water works after the municipality constructed its own water system in an area formerly served exclusively by the plaintiff. *Water Dev. Co.,* 488 N.W.2d at 159. The plaintiff claimed that a taking had occurred, a contention this court rejected. *Id.* at 161. We relied on a United States Supreme Court case, *Alabama Power Co. v. Ickes,* 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374 (1938), in which the Court held that a private business had no compensable right to be free from lawful municipal competition. *Id.* (citing *Alabama Power,* 302 U.S. at 480, 58 S.Ct. at 304, 82 L.Ed. at 378). Based on the holding in *Alabama Power,* this court held that no taking had occurred as a result of the municipal water works' competition where the private water company did not have an exclusive right to furnish water to the area in question. *Id.*

Similarly, here, HMR did not have an exclusive right to provide curbside recycling services to the residents of Cedar Rapids and Marion. As we held in *Water Development,* "[a]ny 'taking' of its business through lawful competition [is] not compensable." *Id.*

HMR attempts to distinguish the present case from the *Water Development* case by pointing out that residents of Cedar Rapids and Marion were required to pay a recycling charge regardless of whether they used the cities' services, a fact not present in *Water Development.* This fact presents an irrelevant distinction, however. Whether or not the cities charge a fee to residents for recycling does not affect the nature of HMR's property interest, and it is that property interest, not municipal charges to third parties, that is determinative of HMR's takings claim.

The Utah Supreme Court rejected a takings claim under nearly identical circumstances in *Bagford v. Ephraim City,* 904 P.2d 1095 (Utah 1995). In that case a private garbage hauler sued the city after the city instituted a municipal garbage collection service and required all residents to pay a fee regardless of whether they were using the city's service. *Bagford,* 904 P.2d at 1096. Recognizing that contract rights are a form of private property, the Utah court noted that "to create a protectable property interest, a contract must establish rights more substantial in nature than a mere unilateral expectation of continued rights or benefits." *Id.* at 1099. The mere expectation that the plaintiff would continue to service its customers was not, according to the Utah court, a contract right cognizable under the takings clause. *Id.*

The Utah court's holding is consistent with decisions from other jurisdictions under similar facts. *See, e.g., Tri–State Rubbish, Inc. v. Waste Management, Inc.,* 998 F.2d 1073, 1082 (1st Cir.1993) (rejecting argument that long-time garbage hauler's "interests in continuing without undue interference deserve protection as 'investment-backed expectations'"); *Hybud Equip. Corp. v. City of Akron,* 654 F.2d 1187, 1189–90, 1192 (6th Cir.1981) (rejecting takings claim where city required, among other things, that private garbage haulers take all recyclables to city's recycling plant, noting that "[c]ourts in literally hundreds of reported cases have upheld the authority of local governments to monopolize and control local garbage collection by eliminating or restraining competition among private collectors"), *judgment vacated and case remanded on other grounds,* 455 U.S. 931, 102 S.Ct. 1416, 71 L.Ed.2d 640 (1982); *Laidlaw Waste Sys., Inc. v. City of Phoenix,* 168 Ariz. 563, 815 P.2d 932, 936 (Ct.App. 1991) (holding that city's garbage collection service in annexed area, which residents were required to

subsidize through taxes and fees, was lawful competition and did not effect a taking of property of private trash haulers previously serving the area); *Tracy v. City of Deshler*, 253 Neb. 170, 568 N.W.2d 903, 907 (1997) (rejecting garbage hauler's takings claim, stating that a garbage collection business "is essentially municipal work"). The general rule that can be gleaned from these cases is that a taking does not result from a local government's competition with a private garbage collector where the private company did not have a franchise. This principle is consistent with our decision in *Water Development* and we apply it here.

In summary, HMR does not have a protectable property interest in being free from lawful municipal competition, nor in continuing to service its customers. Therefore, the district court correctly dismissed HMR's takings claim.

### VIII. *Conclusion.*

We hold that the district court properly held that HMR was not entitled to recover from the defendants as a matter of law. The defendants' recycling services did not unlawfully compete with private enterprise in violation of Iowa Code section 23A.2 because the defendants' services constitute a city enterprise, exempt from chapter 23A. Nor did the defendants violate chapter 553 by allegedly restraining or monopolizing the recycling market. Because the defendants' operation of recycling programs is within their home rule power and such a program would not be prohibited if undertaken by the State, the defendants'

recycling services are exempt from the prohibitions of chapter 553 pursuant to section 553.6(5). In addition, the cities' collection of a fee for their recycling programs did not violate the Due Process Clause because the fees were reasonably related to the cities' goal of reducing reliance on landfills. Furthermore, the recycling charges were not an unlawful tax because they were authorized by section 384.84(1). The defendants did not violate chapter 455B because the requirement that private enterprise be utilized applies only to the State, not to cities and counties. Finally, the defendants' actions did not constitute a compensable taking of HMR's property because HMR's interest in continuing to provide curbside residential recycling services in Cedar Rapids and Marion is not an interest protected from legitimate governmental competition by the Fifth Amendment. Because no genuine issues of material fact exist and because, as discussed above, the defendants are entitled to judgment as a matter of law, the district court did not err in granting summary judgment to the defendants.

**AFFIRMED.**

All justices concur except CARTER, J., who takes no part.