# IN THE COURT OF APPEALS OF IOWA

No. 18-2231
Filed January 9, 2020

**CHIPOKAS, L.L.C.,**
    Plaintiff-Appellant,

**vs.**

**CASEY'S MARKETING COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner, Judge.

Chipokas, L.L.C. appeals from an adverse summary judgment ruling.
**AFFIRMED.**

Matthew L. Preston, Ann C. Gronlund, and David T. Meyers of Brady Preston Gronlund PC, Cedar Rapids, for appellant.

Richard F. Mitvalsky and Thomas F. Ochs of Gray, Stefani, & Mitvalsky, P.L.C., Cedar Rapids, for appellee.

Heard by Vaitheswaran, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

Chipokas, L.L.C. (Chipokas) appeals from the district court's summary judgment ruling in favor of Casey's Marketing Company (Casey's) interpreting the terms of a lease. We affirm.

**I. Facts and Prior Proceedings**

Chipokas is the owner of a parcel of land known as Lot 1 on the corner of Highway 13 and Mount Vernon Road in Linn County, Iowa. Chipokas divided Lot 1 into two adjoining parcels, Lot 1A for development and Lot 1B consisting of undeveloped bare ground. In 2001, Chipokas entered into a transaction with Nordstrom Oil Company (Nordstrom) comprised of two separate leases, the convenience store lease (CSL) and the bare ground lease (BGL). The CSL provided Chipokas would lease Lot 1A to Nordstrom for the construction of one of Nordstrom's HandiMart Food Stores. Under the BGL, Chipokas leased the adjoining undeveloped ground, Lot 1B, to Nordstrom. The term of each lease ran to June 30, 2012, and allowed Nordstrom to renew six times for five-year terms. Section 4.1 of the CSL also contained the following renewal condition: "The exercise of any renewal option hereunder shall require the exercise of the option to renew the [BGL] as defined in Exhibit D attached hereto."

In 2006, Casey's and Nordstrom entered into an asset purchase agreement for thirty-three HandiMart stores, including the store located on the CSL land. The asset purchase agreement specifically stated Lot 1B, the subject of Nordstrom's BGL, was excluded from the assets Casey's acquired from Nordstrom. Nordstrom entered into an assignment and assumption of the CSL with Casey's. Casey's did not take an assignment of the BGL. Chipokas consented to the assignment of the

CSL to Casey's. Chipokas had no discussions with Nordstrom about the assignment of the CSL. There were no discussions concerning the BGL. Nordstrom remained the lessee to the BGL.

In 2012, Casey's informed Chipokas it wished to exercise its option to renew the CSL. Casey's clarified it had no desire to lease the BGL land and believed it had no right to exercise an option within the CSL to lease the BGL. Nordstrom did not renew the BGL when it expired in 2012, and it dissolved at the end of 2012. Ultimately, Chipokas permitted Casey's to renew the CSL without also entering into the BGL in 2012.

In 2016, Casey's again informed Chipokas it wished to exercise its option to renew the CSL. It did not express any intention to lease the BGL land. In 2017, Chipokas brought the instant action for breach of contract and declaratory judgment claiming Casey's was obligated to renew the BGL upon renewal of the CSL.

Both Casey's and Chipokas sought summary judgment in their favor. The district court initially denied both motions. However, after Casey's clarified no additional facts would be disclosed at trial, the district court granted summary judgment in favor of Casey's. The district court ruled:

> The court finds on the record before it, with no resistance from [Chipokas], that there was no conversation between Chipokas and Casey's in 2006 regarding the expectation of whether Casey's or [Nordstrom] or neither would be responsible for the lease of plot 1B. Based on the court's interpretation of the contract language, as previously discussed in the order denying summary judgment, the court finds that BGL and the CSL were separated at the time that Casey's took by assignment from Nordstrom. At that point, Casey's had no obligation to renew the BGL over plot 1B as they had never exercised control over that plot, nor so intended. The court finds on the basis of the record before it, taken as complete, summary judgment in favor of the defendant, Casey's, is appropriate.

Chipokas moved the court to enlarge and amend its order granting summary judgment. In response, the district court provided additional analysis supporting its summary judgment ruling in favor of Casey's.

Chipokas now appeals.

## II. Standard of Review

We review a grant of summary judgment for correction of errors at law. *See Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts." *Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 389 (Iowa 2016) (citation omitted). "In assessing whether summary judgment is warranted, we view the entire record in a light most favorable to the nonmoving party." *Crippen*, 618 N.W.2d at 565.

## III. Discussion

On appeal, Chipokas argues the district court erred in granting summary judgment in favor of Casey's. It contends Casey's breached the CSL by not entering into the BGL upon renewal of the CSL and asks this court to reverse the district court's judgment and remand to the district court with instructions to grant summary judgment in its favor.

### A. General Principles of Contracts

We begin our review by acknowledging a lease is a contract subject to ordinary contract principles. *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 727 (Iowa 2014). Our law governing the interpretation and construction of contracts is well established. We are mindful that "[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." *Jeffries v. Gen. Cas. Ins. Cos.*, No. 14-0032, 2015 WL 1046170, at *2 (Iowa Ct. App. Mar. 11, 2015) (quoting Restatement (Second) of Contracts § 202 (Am. Law Inst. 1981)). "Generally, when we interpret contracts, we look to the language contained within the four corners of the document." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210, 216 (Iowa 2017). "If a contract is not ambiguous, it will be enforced as written." *Thornton v. Hubill, Inc.*, 571 N.W.2d 30, 33 (Iowa Ct. App. 1997) (citing *Spilman v. Bd. of Dirs.*, 253 N.W.2d 593, 596 (Iowa 1977)).

"In the construction of written contracts, the cardinal principle is that the intent of the parties must control, and except in cases of ambiguity, this is determined by what the contract itself says." Iowa R. App. P. 6.904(3)(n); *Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011). Generally, "[t]he construction or legal effect of a contract is always a matter of law to be decided by the court, as is the interpretation or meaning of contractual words unless it depends on extrinsic evidence or a choice among reasonable inferences from extrinsic evidence." *Campbell v. Mid-Am. Constr. Co. of Iowa*, 567 N.W.2d 667, 669–70 (Iowa Ct. App. 1997). "Our task is to determine the intent of the parties as evidenced by the language of their agreement[s]" and to enforce the agreements as written. *See*

*Thornton*, 571 N.W.2d at 33. "It is not our task to go beyond the plain language of the agreements to construe them to mean something the parties wish they would have said in hindsight." *Lucy v. Platinum Servs.*, Inc., No.17-1118, 2018 WL 5840801, at *3 (Iowa Ct. App. Nov. 7, 2018). Here, the parties agree no extrinsic evidence is necessary to interpret the CSL, and we agree. We will interpret the CSL as a matter of law.

**B. Nordstrom's Assignment of Rights and Delegation of Duties to Casey's**

The district court found and the parties agree that, as of the original signing of both the CSL and BGL between Nordstrom and Chipokas and prior to the assignment of the CSL by Nordstrom to Casey's, there is no reason to understand that the parties intended anything other than Nordstrom would renew the BGL if it renewed the CSL. Had Nordstrom assigned both the CSL and the BGL to Casey's, there is no question Casey's would have the obligation to renew the BGL if it renewed the CSL. But Nordstrom only assigned the CSL to Casey's. It did not assign the BGL. Since Nordstrom retained the BGL, the issue is whether Casey's had the obligation to renew the BGL when it renewed the CSL.

Paragraph two of the assignment agreement provides, "Assignee [Casey's] hereby assumes all of the obligations of the Assignor [Nordstrom] as Lessee under the Lease [CSL] arising on and after the Effective Time." Chipokas argues this was an assignment of Nordstrom's rights to Casey's and a delegation of Nordstrom's duties to Casey's. *See Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 833 (Iowa 1998); Restatement (Second) of Contracts § 328(1) (Am. Law Inst. 1981). Chipokas reasons that under the assignment,

Casey's stood in the shoes of Nordstrom and was delegated the duty by Nordstrom to renew the BGL upon Casey's renewal of the CSL. Chipokas argues when Casey's renewed the CSL in 2012, section 4.1 of the CSL required Casey's to do as Nordstrom would be required to do and renew the BGL regardless of the fact there was no discussion of the BGL when Casey's took the assignment of the CSL. *See Pickler v. Mershon*, 236 N.W. 382, 385 (Iowa 1931) ("Where the lessee, in a written lease of land, assigns the lease to another, who accepts in writing the assignment, the latter executes a contract in writing, binding him to perform the conditions of the lease though in the writing there may be no mention of the obligations assumed.").

However, Chipokas's analysis ignores the basic reality that Nordstrom did not assign the BGL to Casey's and Casey's never occupied the bare ground. An obligation only accrues with respect to unoccupied property through a delegation of duties when the instrument assigning rights and delegating duties specifically provides for the obligation to the unoccupied property with certainty. *See Corsiglia v. Summit Ctr. Corp.*, 348 N.W.2d 647, 650 (Iowa Ct. App. 1984). Here, the asset purchase agreement between Nordstrom and Casey's specifically excluded the BGL. Nordstrom's assignment agreement with Casey's did not provide that Casey's would be obligated to lease the bare ground upon renewal of the CSL. Because the assignment agreement does not provide "lucid and unambiguous language" providing that Casey's would lease the bare ground if it decided to renew the CSL, we do not interpret the agreement to bind Casey's in such a manner. *See id.*

Recognizing that Nordstrom remained the lessee under the BGL, Chipokas claims if Nordstrom did not exercise its right to renew under the BGL, Casey's had the duty to do so under the CSL. However, Chipokas incorrectly views the CSL and BGL as one agreement. The CSL and BGL are separate and distinct lease contracts. We recognize the delegation of duties under one lease does not apply to the other lease. *See Midland Mut. Life Ins. Co.*, 579 N.W.2d at 834 ("The lease agreement and expansion agreement were two separate and distinct contracts. Therefore, we find that even if the assignment of rents could be construed as a delegation of duties as well, that delegation would not apply to the duties established between the parties in the expansion agreement."). Nordstrom only assigned the CSL to Casey's. It did not assign the BGL. Nordstrom did not delegate the obligation to renew the BGL to Casey's. It retained the right to renew the BGL for itself. Accordingly, any obligations delegated to Casey's by Nordstrom in the assignment of the CSL do not create obligations under the BGL because the BGL is a separate contract. *See id.* When Casey's stood in the shoes of Nordstrom as the lessee of the CSL and Nordstrom continued as lessee of the BGL without a concurrent assignment of the BGL to Casey's, Casey's assumed the obligation to lease the convenience store, while Nordstrom retained the obligation to lease the bare ground under the BGL. When both leases came up for renewal in 2012, the right of renewal of the CSL rested with Casey's pursuant

to the assignment while the right of renewal of the BGL was retained by Nordstrom pursuant to the terms of the BGL.[1]

### C. Exhibit D of the CSL

Rather than the express language of the assignment agreement, Chipokas looks to the language of the CSL to support its claim. Chipokas claims section 4.1 of the CSL required Casey's to perform Nordstrom's obligation to renew the BGL. However, Casey's obligations under section 4.1 extend only so far as the terms of section 4.1 require. Section 4.1 provides:

> Lessee shall have six options to renew this Lease for a period of five (5) years for each such option, known as an "option term." Not less than one hundred fifty (150) days prior to the end of the Primary Term and any option term, Lessee shall deliver written notice to Lessor that Lessee intends to renew the Lease for the applicable option term. The exercise of any renewal option hereunder shall require the exercise of the option to renew the [BGL] as defined in Exhibit D attached hereto.

Our attention is drawn to the last sentence in section 4.1: "The exercise of any renewal option hereunder shall require the exercise of the option to renew the [BGL] as defined in Exhibit D attached hereto."

Yet exhibit D[2] does not specifically define the option to renew the BGL. The parties agree no extrinsic evidence is available to assist the court in interpreting exhibit D. However, paragraph (e) of exhibit D states:

---

[1] "Renew" is defined in the following ways: "to make new again"; "to restore to existence"; "reestablish, re-create, rebuild"; "to go over again"; "make or do again"; "repeat"; "to begin again"; "recommence, resume." *Renew*, Webster's Third New International Dictionary (2002). Casey's could not "make new again" or "restore to existence" the BGL because there was no existing BGL to which Casey's was a party.

[2] We consider the language of Exhibit D when interpreting the CSL because it is incorporated by clear and specific reference in the CSL. *See Longfellow v. Sayler*,

> As stated in the Exchange Agreement between the Lessor and [Nordstrom] dated July 31, 2001, *if Lessee is leasing the remainder of the Land not included in the Leased Premises*, Lessee shall have the right to increase the number of square feet included in the Leased Premises by decreasing the number of square feet included in adjacent premises (remainder of the Land) being leased by Lessee from Lessor ("Bare Ground Lease") resulting in a change in the annual rental amount due hereunder according to the calculation to be made under paragraph (b) of this Exhibit D; provided, however, that there must be a corresponding and offsetting change in the square feet of the Land included in the Bare Ground Lease and a corresponding and offsetting change in the rent to be paid under the Bare Ground Lease.

(Emphasis added.) The CSL provides "the Land" is Lot 1. "[T]he Leased Premises" is Lot 1A. The land not included in "the Leased Premises" is Lot 1B. The language "*if* Lessee is leasing the remainder of the Land not included in the Leased Premises" (emphasis added) contemplated the possibility that the lessee of the CSL may not be leasing the adjoining bare ground. This includes the possibility that the assignee of the CSL and the lessee of the BGL may not be the same entity. In other words, Exhibit D of the CSL recognizes the CSL may be assigned to one entity and the BGL may be retained by another entity. Without any extrinsic evidence to the contrary, the reference to Exhibit D in section 4.1 of the CSL supports the conclusion that when the assignee of the CSL and the lessee of the BGL are different entities, section 4.1 does not require the assignee of the CSL to renew the BGL because it is not the lessee of the BGL.

---

737 N.W.2d 148, 154 (Iowa 2007) ("The doctrine of incorporation requires the contract to make a clear and specific reference to an extrinsic document to incorporate the document into the contract.").

**D. Chipokas's Consent to the Assignment**

Chipokas laments section 11.1 of the CSL compelled its consent to the assignment and assumption of lease agreement. Section 11.1 provides in pertinent part:

> With the prior written consent of the Lessor which shall not be unreasonably withheld or delayed, Lessee may sublet all or any portion of the Leased Premises or assign its interest under this Lease, provided, however, that the Lessee shall nonetheless remain fully liable for all its obligations under this Lease.

According to Chipokas, the terms of section 11.1 meant it could do nothing but consent to the assignment. Yet section 11.1 did not bar Chipokas from withholding its consent to the assignment for legitimate reasons.

Rather, the provision of section 11.1 prohibiting unreasonably withheld or delayed consent still permitted Chipokas to withhold its consent when a reasonably prudent person in its "position exercising reasonable commercial responsibility [would have] a good faith and reasonable objection to assignment of the lease." *See Van Sloun v. Agans Bros., Inc.*, 778 N.W. 174, 180 (Iowa 2010) (interpreting the phrase "shall not be unreasonably withheld" with respect to an assignment provision contained in a lease agreement). Instead, Chipokas chose not to make reasonable inquires about the interplay between the CSL and the BGL before consenting to the assignment.

Chipokas contends it would not have given up the operative effect of section 4.1, providing the exercise of any renewal option under the CSL shall also require the exercise of the option to renew the BGL, if it had the opportunity to object. However, if Chipokas wanted to be assured of Casey's intent to renew the BGL, it could have, in the exercise of reasonable commercial responsibility, withheld its

consent to the assignment of the CSL unless Nordstrom also assigned the BGL to Casey's or until Nordstrom's assignment of the CSL specifically provided with certainty that Casey's assumed the obligation to lease the bare ground if it renewed the CSL. Chipokas chose not to do so.

Chipokas claims it would have demanded additional consideration to give up the operative effect of section 4.1 and questions why it would be reasonable to give up the operative effect of section 4.1 absent some consideration. But again, it had an opportunity to withhold its consent and request additional consideration and failed to do so. Moreover, we are not blind to the inherent value to Chipokas to have Casey's operate the convenience store rather than Nordstrom's HandiMart.

In the end, for whatever reason, Chipokas made the business judgment to consent to the assignment of the CSL to Casey's without inquiry into Casey's obligation to lease the adjoining bare ground. It cannot complain now about its own failure to raise the issue before consenting to the assignment.

**IV. Conclusion**

Viewing the summary judgment record in a light most favorable to Chipokas, we conclude Nordstrom only assigned the CSL to Casey's. Because Casey's was not a party to the BGL, it did not have a right to renew the BGL. When Casey's exercised the renewal option in section 4.1 of the CSL, it could not be compelled to renew the BGL because it had no right to do so. Nordstrom retained the right to renew the BGL. The terms of section 4.1 remained unaltered, but it only had operative effect when the lessee to the CSL and BGL were the same entity. Chipokas failed to raise the issue of the BGL with Nordstrom and Casey's before

consenting to the assignment of the CSL.  We affirm the district court's summary judgment ruling in favor of Casey's.

**AFFIRMED.**